■ In the Matter of GRAND JURY SUBPOENAS SERVED UPON KEN KRONBERG et al., Appellants. In the Matter of GRAND JURY SUBPOENAS SERVED UPON AL SCHWARTZ et al., Appellants. NATIONAL COMMITTEE OF NATIONAL CAUCUS OF LABOR COMMITTEES et al., Appellants, v THE PEOPLE OF THE STATE OF NEW YORK, Respondent. — Orders of the Supreme Court, New York County (Jeffrey Atlas, J.), entered, respectively, February 16, 1983, *nunc pro tunc* as of December 9, 1982, denying the witnesses' motions to quash Grand Jury subpoenas *ad testificandum,* and December 9, 1982, denying the motion of National Caucus of Labor Committees to intervene and for related relief, are affirmed, without costs. On Saturday, October 23, 1982, unidentified persons distributed a 12-page tabloid entitled *Profiles of the Times,* for insertion into the next day's *Sunday New York Times.* The tabloid was printed on paper and used typefaces similar to those of the *New York Times* Book Review. It contained fraudulent articles of a scurrilous nature about public officials, candidates for political office and other persons, as well as photographs of those same individuals and fraudulent advertisements. Some 7,000 copies of this publication were allegedly distributed in Manhattan and Queens. A New York County Grand Jury commenced an investigation into possible criminal offenses related to its printing and distribution. On November 16, 1982, Sergeant Mervin Woike, an officer assigned to the New York County District

Attorney's office squad, applied to the Supreme Court, New York County, for a warrant to search the premises occupied by PMR Printing Co., Inc. (PMR), at 207 West 25th Street in Manhattan. Justice Atlas issued the warrant the same day. As noted by the dissent, we have read the affidavits submitted by the police *in camera* and have unanimously concluded that, based upon the information contained in these affidavits, the hearing court had probable cause to issue the search warrant. Before the warrant was executed, an Assistant District Attorney assigned to the investigation gave Sergeant Woike a set of blank subpoenas and instructed Woike to serve a subpoena on anyone found on the premises of PMR who appeared or was determined to be an employee of PMR. In accordance with these instructions, the police officers who executed the warrant obtained the names of 23 employees or officers of PMR who were found on the premises and served them with subpoenas. The officers entered the witness' name and address on each subpoena, as well as a return date. The officers also served a twenty-fourth person on the premises, Barbara Boyd. Ms. Boyd took possession of the search warrant, and the officers observed her conversing by telephone with unidentified persons during the search, in a manner which made it reasonable to believe that she was an employee or officer of PMR. One unidentified person on the premises was determined not to be an employee of PMR and was not served with a subpoena. Nine of the witnesses are allegedly members of the National Caucus of Labor Committees. On November 29, 1982, the witnesses moved to quash the subpoenas. On December 2, 1982, the National Committee and the National Executive Committee of the National Caucus of Labor Committees (NCLC) moved to intervene. Both motions were denied by Justice Atlas on December 9, 1982. On appeal, the witnesses argue that the subpoenas should be quashed because they were improperly issued and because the police officers who served them violated the Fourth Amendment in obtaining the witnesses' names. The NCLC argues that it is entitled to intervene in the Grand Jury investigation on its own behalf and on behalf of its members, since the investigation has been undertaken in bad faith, as a means of harassing the NCLC and its members for improper political purposes. The NCLC also argues that the court below improperly failed to determine whether the Grand Jury investigation can be sustained in the face of the NCLC's claim that the investigation infringes upon its members' First Amendment associational rights. These contentions by appellants are without merit. The witnesses' contention that the subpoenas were issued in violation of CPL 190.50 is based on their assertion that the police officers who served the subpoenas decided which persons to call to testify before the Grand Jury, and thus improperly exercised a power the statute reserves to the District Attorney or the Grand Jury itself. CPL 190.50 (subd 2) provides that: "The people may call as a witness in a grand jury proceeding any person believed by the district attorney to possess relevant information or knowledge." The assertion in the dissent that the subpoena power was unlawfully delegated to the police officers attached to the District Attorney's office is not borne out by the facts. The Assistant District Attorney represented to Justice Atlas that before the police went to PMR to execute the warrant, they were instructed to serve subpoenas *only* on *employees* of PMR who were found on the premises, and that the police complied with these instructions. According to the Assistant District Attorney, the police did not serve everyone at PMR; one person found on the premises was determined not to be an employee, and that person was not served. These representations were undisputed below, except solely for the allegation that Barbara Boyd was not associated with PMR. It was undisputed that Ms. Boyd accepted the search warrant and then discussed it on the telephone. This

conduct justified a belief by the police that she was employed by PMR. The Judge credited these representations and found the facts accordingly. On these facts, plainly, it was the Assistant District Attorney and not the police who called the witnesses, precisely as required by CPL 190.50 (subd 2). The officers were attached to the New York County District Attorney's office squad and were no more than an administrative arm of that office. It makes no difference that the police obtained the witnesses' names and entered them on the subpoenas before the subpoenas were served. That act imported no exercise of discretion by the police. It was a merely ministerial act, made necessary by the fact that, although the assistant had determined whom he wished to call and described those individuals to the police in categorical terms, he did not know the witnesses' names when he sent the police to serve the subpoenas. The witnesses' second contention, that the police violated the Fourth Amendment in obtaining their names, is based on their claim that the police misrepresented to the witnesses that the search warrant authorized them to obtain the witnesses' names. The witnesses maintain that they identified themselves not voluntarily but only in submission to this alleged improper show of authority, and they, as does the dissent, characterize the alleged procedure as an "unlawful seizure" which violated the Fourth Amendment and should be remedied by quashing the subpoenas. It is settled, however, that a witness may not refuse to testify before the Grand Jury on the ground that the questions put to him are based on evidence obtained in an unlawful search and seizure. (*United States v Calandra,* 414 US 338, 349-355; *Matter of Grand Jury Proceedings [People v Doe],* 89 AD2d 605; *People v McGrath,* 46 NY2d 12, 22, cert den 440 US 972.) It follows that an unlawful search and seizure may not serve as a basis for quashing a subpoena of this sort. The motion by the National Caucus of Labor Committees (NCLC) to intervene was also properly denied. The NCLC has demonstrated no "real and substantial interest" in the Grand Jury investigation to justify a proposed intervention (see *Matter of Grand Jury,* 619 F2d 1022, 1026-1027). The allegations by NCLC that the Grand Jury is investigating in bad faith, that it (the NCLC) is the target and that the investigation infringes on its members' associational rights, are wholly conclusory. They do not warrant even a hearing since they are not substantiated by credible, particularized allegations tending to show that they are true. The affidavit submitted in support of the motion contains hearsay, irrelevancies and conclusions. It states no specific facts which fairly support the NCLC's assertion that the Grand Jury investigation was undertaken in bad faith, or that the investigation was designed to infringe on the associational rights of any member of the NCLC. The witnesses herein were called *solely* because they worked for PMR. As noted, the instructions given to the police by the District Attorney left the police no discretion as to who should be served. The fact that nine of the witnesses are members of NCLC was not an issue before the proposed intervenor itself disclosed it. The NCLC's lack of standing to intervene also mandates rejection of its claim that it may move to quash the subpoenas, since both claims are based on its ability to establish an interest in this case and it has failed to do so. Concur — Ross, Asch and Milonas, JJ.

Murphy, P. J., dissents in a memorandum as follows: On October 23, 1982, unidentified persons distributed an unauthorized insert for the Sunday editions of the *New York Times (Times).* The insert was called "Profiles of the Times." It purportedly contained scurrilous articles by well-known authors about various public personages. Approximately 7,000 copies were distributed in New York and Queens Counties before the fraudulent insert was discovered. Upon a complaint made by officials of the *Times,* the New York County

District Attorney's office instituted an investigation into the matter. On November 16, 1982, a police officer assigned to the District Attorney's office applied for a search warrant to search the premises occupied by PMR Printing Co., Inc. (Printing), at 207 West 25th Street in New York County. Supporting affidavits were submitted by police officers assigned to the District Attorney's squad. We have read those supporting affidavits *in camera.* Based upon the information contained in those affidavits, the hearing court had probable cause to issue a search warrant on November 16, 1982 in furtherance of the investigation into forgery and the other crimes enumerated by the prosecution. Prior to the execution of the search warrant, an Assistant District Attorney instructed the police officers to serve all of Printing's employees, present upon the premises, with subpoenas. In accordance with this directive, the Assistant District Attorney provided the officers with a supply of blank subpoenas. On November 16, 1982, 17 police officers executed the search warrant at Printing's premises. Various items of machinery were removed from the premises over a four-hour period. Moreover, during that time span, the officers asked each individual present for identification and his relationship with Printing. Subpoenas were ultimately issued to 23 employees of Printing. A subpoena was also served upon a twenty-fourth individual, Barbara Boyd, because she was talking on the telephone concerning matters that seemed to relate to Printing's business and to the investigation. Boyd had previously accepted service of the search warrant. A twenty-fifth individual was not served with a subpoena after he satisfied the officers that he was not employed by Printing. The witnesses served with the subpoenas made two motions to quash on the prime grounds that (i) the District Attorney had improperly delegated his subpoena power to the officers and (ii) the officers had illegally seized the subpoenaed witnesses before eliciting their identities. The National Committee and National Executive Committee of the National Caucus of Labor Committees (National Caucus) brought a separate motion to intervene and to enjoin the Grand Jury investigation. The National Caucus emphasized that nine of the individuals subpoenaed and Printing's entire management belonged to its membership. It sought the right to intervene and to quash as the real target of the investigation. The hearing court denied the motions of the subpoenaed witnesses to quash. It found that the District Attorney lawfully delegated to the police officers the duty of completing the blank subpoenas. The hearing court did not reach the question of whether the officers had violated any Fourth Amendment rights of those individuals. The court reasoned that, even if the officers had unlawfully elicited the names from those witnesses, there would be no compelling reason for quashing the subpoenas. The motion of the National Caucus to intervene was denied without any detailed explanation. The first issue presented is whether the District Attorney has the statutory right to delegate his power to subpoena under CPL 190.50 (subd 2). The afore-mentioned statute provides as follows: "2. The people may call as a witness in a grand jury proceeding any person believed by the district attorney to possess relevant information or knowledge." The term "District Attorney" is defined as follows (CPL 1.20, subd 32): "32. 'District Attorney' means a district attorney, an assistant district attorney or a special district attorney, and, where appropriate, the attorney general, an assistant attorney general, a deputy attorney general or a special deputy attorney general." Generally, statutes that are in restraint of personal liberty must be strictly construed (McKinney's Cons Laws of NY, Book 1, Statutes, § 314, p 486; cf. *People ex rel. Van Der Beek v McCloskey,* 18 AD2d 205, 208). Since the service of a subpoena upon an individual under CPL 190.50 (subd 2) seriously limits his personal freedom, that statute must be read in the straightforward

language of the Legislature. Had the Legislature wished to give the subpoena power to police officers attached to the District Attorney's office, appropriate provision would have been made in CPL 190.50 (subd 2) or in 1.20 (subd 32). The legislative silence in this area must be viewed as a refusal on its part to expand this freedom-limiting power beyond the legal professionals found on the District Attorney's staff. Likewise, there is no merit to the collateral argument that the police officers merely performed a ministerial function in completing the blank subpoenas. This is not a case where an Assistant District Attorney was present at the scene and gave direct orders to the officers to complete the subpoenas in compliance with his instructions. The officers in this proceeding were given the power to select those individuals whom they believed to be employees of Printing. It is apparent that the officers exercised a discretionary power rather than a ministerial one. It was the officers themselves who were required to question every individual present and to determine whether that individual was an employee. Although 23 individuals eventually admitted their employment with Printing, it was the officers, rather than an Assistant District Attorney, who performed the interrogation leading to the admissions. Furthermore, it was the officers who selectively decided to subpoena Boyd and to release the unidentified individual. The subpoenas must be considered void because they were issued by the police officers rather than by the District Attorney. The second issue is whether the witnesses were unlawfully forced to identify themselves. For purposes of this point, it will be assumed that the officers had the lawful authority to complete the subpoenas at the behest of the District Attorney. The instant search warrant was only directed at the premises; it did not direct a search of any occupants present (CPL 690.15, subd 1; cf. *People v Nieves,* 36 NY2d 396). Moreover, when the officers entered the premises, they did not observe any activity or contraband that would have given them probable cause to believe that the occupants had committed or were committing a crime. However, the search warrant reasonably served as a predicate for asking informational questions of the occupants (*People v De Bour,* 40 NY2d 210, 223). While the officers had the right to make initial inquiry, the occupants had a constitutional right not to answer. Unless the officers had probable cause to arrest the occupants, the latter were entitled to walk away without responding (*People v Howard,* 50 NY2d 583, 590). A person is seized within the meaning of the Fourth Amendment when he is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action (*People v Cantor,* 36 NY2d 106, 111). The subpoenaed witnesses claim that they were involuntarily forced to reveal their names upon a submission to police authority during the four-hour search of the premises. (Cf. *People v Gonzalez,* 39 NY2d 122, 128.) The prosecution does not seriously contest the fact that the officers kept the witnesses upon the premises for an extended period and demanded identification from these witnesses so that the subpoenas could be completed. In the absence of probable cause for arrest, the officers' actions constituted an unlawful seizure. The facts in this case should be distinguished from those in an instance where officers make a reasonable inquiry as to the identification of a defendant after a lawful arrest (*People v Rivera,* 26 NY2d 304, 309). Since the subpoenas were completed with the tainted information, they must be quashed. In view of that determination, the appeal from the order denying National Caucus' motion to intervene should be dismissed as academic. For the reasons stated, the order of the Supreme Court, New York County (Atlas, J.), entered February 16, 1983, denying the witnesses' motions to quash the subpoenas, *nunc pro tunc* as of December 9, 1982, should be reversed, on the law, and the motions should be granted. The appeal

from the order of the Supreme Court, New York County (Atlas, J.), entered December 9, 1982, denying the motion of National Caucus to intervene and for related relief should be dismissed as academic.