Chief Judge Fuld.
Convicted in 1967 of selling and possessing a narcotic drug (marijuana) upon evidence establishing guilt beyond a reasonable doubt, the defendant seeks a reversal on the ground, among others, that some of the jurors had learned that another indictment was pending against him on a similar charge.
Posted on the door of the courtroom in which the defendant was being tried was a calendar listing six cases scheduled for trial in that Part. At the top of the calendar were these two entries:
“Assistant, O’Malley; Ind. No. 2443/66; Defendant Jose Rivera; Charge, Vio. Sec. 1751-1 & 3 P.L. On trial, William B. Jacobs.
“Assistant, O’Malley; Ind. No. 654/67; Defendant, Jose Vasquez Rivera; Charge, Vio. Sec. 1751-1 & 3 P.L. Ready for Trial, William B. Jacobs.”
The members of the jury, who were required to pass through the door upon which the notice was affixed, were aware of the fact that the defendant was being tried by an “ Assistant District Attorney” named “ O’Malley”; that he was accused of violating sections 1751 (subds. 1 and 3) of the former Penal Law; and that his lawyer’s name was “William B. Jacobs.” Moreover, the defendant was referred to throughout the trial as either “Jose” or “Jose Vasquez” Rivera. Thus, á juror, seeing this notice, could reasonably have concluded—what was, in fact, the case—that the defendant was to be tried, immedimately after the trial then in progress, on another indictment charging a similar crime.
The defendant’s attorney brought this fact to the attention of the court and moved for a mistrial. He asserted that both the defendant and one of the defense witnesses (a Mr. Torres) had actually observed several members of the jury looking at the calendar and had heard one of them say, “ that’s him,” another reply, “ No, that’s not him ” and the first respond: “ Yes, Jose Rivera and Jose Vasquez Rivera, those are both his names. ’ ’ In *307 addition, Mr. Torres told the judge that, although he did not know the names of the jurors whom he had overheard, he could identify and point them out. Immediately after hearing this, the court simply denied the motion for a mistrial without making any further inquiry. There was nothing in the record to justify the judge’s ignoring the information thus imparted to him. To deny the motion out of hand was improper. At the very least, he should have made some investigation to ascertain whether any jurors had been influenced against the defendant by what they saw on the court calendar or heard about it.
It would, of course, have been gross error to admit evidence that another indictment for a similar crime was pending against the defendant. (See, e.g., People v. Alamo, 23 N Y 2d 630, 634; People v. Morrison, 195 N. Y. 116, 117; People v. Cascone, 185 N. Y. 317, 334; People v. Crapo, 76 N. Y, 288, 290-291.) If such evidence were revealed to the jury during the course of a witness’ testimony, the judge would have been required, upon a proper motion, to assess the likelihood of prejudice and either grant a mistrial or attempt to limit the prejudicial effect by ordering the matter stricken and instructing the jury to disregard it. When, as in the present case, prejudicial material has come to the attention of jurors outside of the courtroom, the harm to the defendant is at least as great, and it has been uniformly held that the trial judge ‘ ‘ is required to take appropriate steps to insure that the jurors [have] not been exposed to or prejudiced by such accounts. ’ ’ (Margoles v. United States, 407 F. 2d 727, 734; see, also, Marshall v. United States, 360 U. S. 310; Babb v. State, 18 Ariz. 505; People v. Wong Loung, 159 Cal. 520; People v. Murawski, 394 Ill. 236; Sprinkle v. State, 137 Miss. 731; Ann., Juror Reading Newspaper, 31 ALR 2d 417, 429.)[1]
It is true that this court has, in a few cases, sustained convictions even though it appeared that the jurors might have discovered facts which would not have been admissible as evidence. (See People v. Sher, 24 N Y 2d 454; People v. Genovese, 10 N Y 2d 478; People v. Lubin, 229 N. Y. 601.) But, in each of those *308 cases, the trial judge, after questioning the jurors, had expressly determined that they ‘ ‘ were capable of rendering an impartial verdict and of deciding the case solely upon the proof received during the trial.” (People v. Genovese, 10 N Y 2d 478, 484-485, supra.) In sharp contrast, the trial judge in the case now before us did absolutely nothing to ascertain whether, or to insure that, the jurors were able to rely solely on the evidence received during the trial and return an impartial verdict.
It may well be, of course, that, despite the assertions made to the judge, the jurors did not notice the calendar posted on the door or, if they had, that they did not comprehend its meaning. At the very least, however, the court should have spoken to them—and this could have been done with sufficient skill to avoid any further harm to the defendant — as to their duty to confine their deliberations to the evidence before them. As we recently observed, in a somewhat comparable case, an admonition to the jurors that they should consider only the proof adduced “ serve [s] a real purpose by drawing their attention to the unfairness of their considering anything but the record evidence ”. (People v. Sher, 24 N Y 2d 454, 457, supra.) The simple fact is that, in the present case, the court failed to take any steps whatsoever to assure that the jurors were not exposed to or adversely influenced by the prejudicial matter on the calendar.
This was serious error and calls for a new trial rather than a remand to the trial court for a hearing. The present ease is quite different from People v. De Lucia (20 N Y 2d 275), upon which our dissenting brothers rely. That case involved a motion for a new trial on the ground—not known until after the verdict had been rendered and the jury discharged— that some jurors had paid an unauthorized visit to the scene of the crime. Whether a new trial should have been granted depended on the facts underlying the defendant’s posttrial motion and it was, accordingly, necessary to remit the case for a factual determination. We have no such situation here. In this case, the error consisted of the court’s failure, during the trial itself, to take any steps to guard against the defendant’s being prejudiced by what the jurors might have seen on the calendar or heard about it.
*309 Since, therefore, there will be a new trial, we think it desirable to dispose of one of the other arguments made by the defendant. During his cross-examination, he testified that his address was 1002 Garrison Avenue and denied that he had told the police that he lived at a different location. In an attempt to discredit him and, perhaps, indicate consciousness of guilt, the prosecution recalled the arresting officers to the stand. They testified that the defendant had, in fact, given them a different address when he was apprehended. Defense counsel objected to this testimony on the ground that the People had not established that the defendant had been warned of his rights prior to stating his address. The objection was overruled, and the defendant now urges that the court erred, that it should have, on the basis of the Supreme Court’s decision in Miranda v. Arizona (384 U. S. 436), excluded the police officers’ testimony that he had furnished them with a false address. This ruling was correct. We cannot believe that the decision in Miranda was designed to apply to a situation such as the present. Asking a suspect for his name and address is neither intended nor likely to elicit information of a criminal nature. The police are certainly entitled to make a reasonable inquiry as to the identity of the person they have taken into custody without the necessity of formal warnings. As one court has stated, in response to an argument similar to the one here advanced, “ [i]t seems clear that the. questioning conducted during the booking process * * * was not the type of interrogation proscribed by Miranda v. Arizona ”. (State v. Rassmussen, 92 Idaho 731, 736; see, also, Farley v. United States, 381 F. 2d 357 [5th Cir.]; People v. Hernandez, 263 Cal. App. 2d 242; Propst v. State, 5 Md. App. 36; Clarke v. State, 3 Md. App. 447. But see, contra, Proctor v. United States, 404 F. 2d 819 [D. C. Cir.].)
The judgment should be reversed and a new trial ordered.

. Indeed, the Supreme Court actually reversed a conviction where- the jury had learned that the accused had been convicted of another crime, even though the trial judge had questioned the jurors and stated that “he felt there was no prejudice to petitioner ” as a result of the articles. (Marshall v. United States, 360 U. S. 310, 312, supra.)