STATE OF NORTH CAROLINA v. ROBERT LEE SELLERS

No. 8126SC1241

(Filed 6 July 1982)

1. **Criminal Law § 75.7— routine questions relating to identification—Miranda warnings not required**

    Routine questions posed to defendant by the arresting officer asking him his name, address, date of birth, height, weight, color of eyes and place of employment did not constitute the type of interrogation required to be preceded by the *Miranda* warnings, notwithstanding defendant's address was relevant to a charge against him of driving while his license was permanently revoked, since the State had the burden of proving that defendant received notice of the revocation prior to the date of his arrest.

**2. Automobiles and Other Vehicles § 126.5; Criminal Law § 75.7— statements in refusing breathalyzer test—Miranda warnings not required**

Defendant's statements in refusing to take a breathalyzer test, "No, I'm not taking it. I probably would blow a thirty. I'm drunk. I would maybe blow a thirty," were not the result of custodial interrogation requiring the *Miranda* warnings and were admissible in evidence.

**3. Automobiles and Other Vehicles § 3.5— driving while license was revoked—presumption from mailing of notice of revocation—instructions**

In a prosecution of defendant for driving while his license was permanently revoked, the trial court's instructions, when read as a whole, sufficiently apprised the jury that the mailing to defendant of notice of the permanent revocation of his license pursuant to G.S. 20-48(a) created only a rebuttable and not a conclusive presumption that he received the notice and thereby acquired knowledge of the license revocation.

Judge HEDRICK concurs in the result.

APPEAL by defendant from *Freeman, Judge.* Judgments entered 31 March 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 4 May 1982.

Defendant was charged with driving while under the influence of intoxicating liquors and driving while his license was permanently revoked. He pleaded guilty to those charges in district court and appealed to superior court for a trial *de novo.* Defendant was found guilty of "driving a motor vehicle on a public highway while his driver's license was revoked permanently," and reckless driving. He appeals the judgments of imprisonment entered upon those verdicts.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Associate Attorney Philip A. Telfer, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant-appellant.*

HILL, Judge.

The State's evidence tends to show that Charlotte police officer W. F. Christmas first observed defendant after midnight on 6 May 1980 standing beside a 1969 Cadillac automobile in a service station parking lot. Christmas observed that defendant's pants were torn. "He said he had been in a fight with his brother, that it was a family quarrel, and that his brother and whoever was with him had already gone back home or had left the scene."

Christmas further testified that defendant smelled strongly of alcohol, his eyes were bloodshot, and he staggered when he walked. Christmas advised defendant not to drive his car; that if he were caught driving in his present condition he would "go to jail for drunk driving." Christmas left defendant and later observed him driving the 1969 Cadillac. The Cadillac was drifting from lane to lane. Christmas stopped the automobile, got defendant out of the car, patted him down, and placed him under arrest for "driving under the influence."

After his arrest, defendant was taken to the Mecklenburg County jail where he was asked to take some performance tests and a breathalyzer test to determine if he was intoxicated. Defendant could accomplish none of the performance tests satisfactorily. Christmas then read defendant's *Miranda* rights to him; however, Christmas testified that defendant "did not wish to answer questions."

A *voir dire* examination of Christmas then was conducted to determine the admissibility of certain statements defendant made to Christmas before and after the reading of defendant's *Miranda* rights. On *voir dire*, Christmas testified that defendant refused to take the breathalyzer saying, two or three times to the breathalyzer operator, " 'No, I'm not taking it. I probably would blow a thirty. I'm drunk. I would maybe blow a thirty.' " The trial judge found as a fact that this statement "was not the result of any custodial interrogation," concluded that defendant's statement was a "spontaneous utterance," and denied defendant's motion to suppress the statement.

Thereafter, additional *voir dire* evidence was given concerning questions that Christmas asked defendant following his refusal to waive his *Miranda* rights. Christmas testified as follows:

> . . . I took him up to fill out the arrest sheet. I asked him his name, his address, his date of birth, his height, his weight, where he was born, the color of his eyes, place of employment. I may have asked him [sic] home phone number. I can't recall if I asked that, but that was general information we ask everybody being processed, and that's all. After he refused, I never once asked him anything about his driving or anything to do with it.

The trial judge found as facts that "defendant was read the Miranda rights and refused to answer any further questions. That no further questions relating to the crime were asked and that the defendant was asked his name, address, date of birth. That he answered those questions." The judge concluded that the questions asked by Christmas "are not covered by the Miranda warning and that they are admissible into evidence . . .." Again, defendant's motion to suppress was denied.

After obtaining defendant's name, address, and date of birth, Christmas requested a copy of defendant's driving record from the Division of Motor Vehicles. The records revealed that a notice of revocation of driving privileges had been mailed to defendant at "504 Spruce Street, Charlotte, North Carolina, zip code 28208." The notice was dated 13 August 1979 and contained a partially illegible certification. It stated that effective 12:01 a.m. on 24 July 1979, defendant's driving privilege is " 'permanently revoked for conviction of three or more moving violations while license suspended or revoked.' " Christmas then testified that when he arrested defendant on 6 May 1980, he asked defendant to produce his driver's license; however, defendant, without explanation, failed to do so.

Defendant's evidence tends to show that his permanent address was 504 Spruce Street but that he did not live there between November 1978 and November 1979. At that time, he lived with Irene Hart at 3623 Bahama Drive. Defendant's mother, Mrs. Eloise Sellers, testified that she remembered receiving a letter from the Division of Motor Vehicles for defendant at 504 Spruce Street, but she forgot to give it to him. Defendant testified that he never received the letter and that he did not know that his license had been permanently revoked on 6 May 1980. However, defendant did receive a letter sent to his mother's house from the Division of Motor Vehicles dated 26 February 1980 stating that defendant's " 'driver's license privilege was suspended . . ..' "

Defendant stated that he was not drunk at the time of his arrest. His failure to successfully accomplish the performance tests was due to the injuries he suffered during the fight with his brother.

In his first argument, defendant contends that he was deprived of his right to remain silent, his right to counsel, and his

right to due process of law when the prosecutor was permitted to introduce testimony concerning his post-arrest refusal to waive his rights according to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). The record reveals that Christmas was permitted to testify that defendant indicated that he did not wish to answer questions without a lawyer present. However, defendant did not object to this testimony at the points indicated by Exception Nos. 3, 4 and 7, the bases for this assignment of error. There being no objection to the testimony below, defendant has waived his right to raise the question on appeal. G.S. 15A-1446(b). This assignment of error is overruled.

[1] Next, defendant contends that his constitutional rights were violated by admission into evidence of his responses to routine questions posed by Christmas after he indicated his refusal to waive his *Miranda* rights. Specifically, defendant argues that the questions constitute interrogation within the meaning of *Miranda* and that his responses, especially that of his address, were related to the crimes for which he was arrested. We acknowledge that defendant's address is relevant to the charge of driving while his license was permanently revoked since the State had the burden of proving that defendant had knowledge of the revocation prior to the date of his arrest in order to sustain a conviction. *See State v. Chester,* 30 N.C. App. 224, 226 S.E. 2d 524 (1976); G.S. 20-48(a). However, we do not accept defendant's argument that the use of his answers to routine questions following a refusal to waive *Miranda* rights is violative of his constitutional rights.

The issue of whether routine questions asked by officers must be preceded by a reading of *Miranda* rights has not been addressed by our courts so far as we can determine. However, other states have found that such questioning is not the type of interrogation proscribed by *Miranda. See State v. Cozad,* 113 Ariz. 437, 556 P. 2d 312 (1976); *Mills v. State,* 278 Md. 262, 363 A. 2d 491 (1976); *People v. Riviera,* 26 N.Y. 2d 304, 258 N.E. 2d 699 (1970).

This case is distinguishable from *State v. Blakely,* 22 N.C. App. 337, 206 S.E. 2d 352 (1974), which defendant cites. In that case, defendant was arrested and advised of his *Miranda* rights. He stated that he understood his rights and then answered ques-

tions on an "alcoholic influence report form." Defendant subsequently was charged with operating a motor vehicle on a public highway while under the influence of intoxicating liquor. These circumstances are far different from the present case. Here, the routine questions posed by Christmas from the arrest sheet did not deal with the alleged crime *per se*, but only dealt with the matter of the identification of defendant.

Therefore, unless the routine questions posed are such as they may reasonably be likely to produce incriminating responses, the routine questions are not proscribed by *Miranda*. The trial judge's conclusion of law is supported by the facts found, and the latter are supported by the evidence. This argument has no merit.

[2] Defendant's third argument challenges the admissibility of the statements he made to the breathalyzer operator, and in the presence of Christmas, when he refused to take the breathalyzer test. According to Christmas, defendant said, " 'No, I'm not taking it. I probably would blow a thirty. I'm drunk. I would maybe blow a thirty.' " As noted above, the trial judge found that "this statement was not the result of any custodial interrogation," concluded as a matter of law that it was a "spontaneous utterance," and denied defendant's motion to suppress the statements. We find no error in the admission of this evidence.

Although *Miranda* has been held inappropriate to a breathalyzer test administered pursuant to our statutes, our Supreme Court's further observation in *State v. Sykes*, 285 N.C. 202, 206, 203 S.E. 2d 849, 852 (1974), bears repeating:

> We observe in passing that *State v. Beasley*, 10 N.C. App. 663, 179 S.E. 2d 820 (1971), and *State v. Tyndall*, 18 N.C. App. 669, 197 S.E. 2d 598 (1973), should not be interpreted to hold that the rules of *Miranda* are inapplicable to *all* motor vehicle violations. We said in *State v. Hill*, 277 N.C. 547, 178 S.E. 2d 462 (1971): "One who is detained by police officers under a charge of driving under the influence of an intoxicant has the same *constitutional* and statutory rights as any other accused."

(Emphasis original.) *See also State v. Flannery*, 31 N.C. App. 617, 230 S.E. 2d 603 (1976). Likewise, it has been held that upon proper foundational proof, a willful refusal to submit to the taking of a

breath sample is admissible into evidence. *Etheridge v. Peters,* 301 N.C. 76, 269 S.E. 2d 133 (1980). Nevertheless, defendant argues that his statements regarding his refusal to take the breathalyzer test are "testimonial and communicative with[in] the meaning of the privilege against self-incrimination and are therefore governed by Miranda." We conclude that under the principles stated above, defendant's argument is merely a distinction without a difference. His statements are admissible evidence. The trial judge's finding of fact is supported by the evidence, and his conclusion is supported by the finding of fact.

In any event, the admission of the statements is harmless since defendant testified that he made the statements he now says should have been excluded. This argument has no merit.

[3] In his fourth argument, defendant contends that the prosecutor's closing argument and the trial judge's charge to the jury concerning his knowledge of the permanent revocation of his driver's license by proof of mailing deprived him of his right to a fair trial by jury and due process of law. Defendant does not dispute the fact that the judge properly charged the jury on the element of knowledge. Rather, defendant argues that a reasonable juror could have interpreted the judge's charge on this issue to create a *conclusive* presumption that he received notice and thereby acquired knowledge of the license revocation.

G.S. 20-48(a) provides, in part, as follows:

Whenever the Division [of Motor Vehicles] is authorized or required to give any notice under this Chapter or other law regulating the operation of vehicles, unless a different method of giving such notice is otherwise expressly prescribed, such notice shall be given either by personal delivery thereof to the person to be so notified or by deposit in the United States mail of such notice in an envelope with postage prepaid, addressed to such person at his address as shown by the records of the Division. The giving of notice by mail is complete upon the expiration of four days after such deposit of such notice.

Our Supreme Court has held that "[f]or purposes of a *conviction* for driving while license is suspended or revoked, mailing of the notice under G.S. 20-48 raises only a prima facie presumption that

defendant received the notice and thereby acquired knowledge of the suspension or revocation. [Citations omitted.] Thus, defendant is not by this statute denied the right to rebut this presumption." *State v. Atwood*, 290 N.C. 266, 271, 225 S.E. 2d 543, 545-46 (1976) (emphasis original). *See also State v. Chester, supra.* Of course, the burden is on the State to prove that defendant had knowledge at the time of his arrest that his driver's license was revoked.

> [T]he State satisfies this burden when, nothing else appearing, it has offered evidence of compliance with the notice requirements of G.S. 20-48 because of the presumption that he received notice and had such knowledge. When there is some evidence to rebut this presumption, the issue of guilty knowledge is raised and must be determined by the jury under appropriate instruction from the trial court.

*Id.* at 227, 226 S.E. 2d at 526.

In the present case, defendant excepted to the following portion of the prosecutor's closing argument to the jury:

> There was a receipt at the bottom of [the revocation] letter that was discussed in testimony as to the fact that it was mailed to [504 Spruce Street], and I would argue to you that, in fact, that notice — that letter is all the notice that the Department of Motor Vehicles could give, and that's all the Department of Motor Vehicles needs to give, is to mail it to his address where he lives and where he resides, and then I would argue to you that *the presumption arises that he was notified of it and he is held by it, held to abide by the information that is in that letter, and that letter notified him of his permanent revocation and notified him of penalties, and he continued to drive . . ..*

(Emphasis added.) The trial judge charged the jury, in part, as follows:

> In order for you to find that notice of revocation was given of which the defendant had knowledge, the State must prove three things beyond a reasonable doubt. First, that the notice was deposited in the United States mail at least four days before the alleged driving of the motor vehicle by the defendant. Second, that the notice was mailed in an envelope with postage prepaid. And, third, that the envelope was addressed

to the defendant at his address as shown on the records of the Department of Motor Vehicles.

. . . .

Now, to find the defendant guilty of this charge, driving while license permanently revoked, the State must comply with these three requirements and prove each one beyond a reasonable doubt. *The notice provision permits, but does not compel, you to find that the defendant received the notice and thereby requires knowledge of the permanent revocation. The State must prove the essential elements of the charge, including the defendant's knowledge of the permanent revocation, beyond a reasonable doubt.*

So, I will finally charge you that if you find from the evidence and beyond a reasonable doubt that on or about May 6, 1980, the defendant drove a 1969 Cadillac on Wilkinson Boulevard . . . while his driver's license was permanently revoked, *and that defendant knew on that date that his license was permanently revoked, because at least four days before the alleged revocation, the Department of Motor Vehicles deposited notice of the permanent revocation in the United States mail in an envelope with postage prepaid and addressed to the defendant at his address as shown by the records of the defendant,* . . . then it would be your duty to return a verdict of guilty as charged. *However, if you do not so find, or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.*

(Emphasis added.)

When read as a whole, the trial judge's charge to the jury adequately states the law as it applies to the notice requirements of G.S. 20-48(a). Although the emphasized portions of the charge quoted above note the presumption that mailing of the notice of revocation was received by defendant and that he thereby had knowledge of it, those portions of the charge also indicate that such a presumption does not "compel" a finding of receipt, and thereby knowledge. Thus, the portion of the prosecutor's closing argument quoted above and the omission of a specific statement by the trial judge in his charge that the jury need not find knowledge of permanent revocation by compliance with G.S.

20-48(a) are not prejudicial error in light of the entire charge to the jury. This argument therefore is without merit.

Defendant's fifth argument assigns as error the trial judge's denial of his motion to dismiss the charge of driving while license permanently revoked because there is insufficient evidence that defendant had knowledge that his license was permanently revoked. We conclude, however, that the evidence recounted above is sufficient to withstand defendant's motion to dismiss this charge.

Finally, defendant contends that the prosecutor, by arguing that defendant refused to take a breathalyzer test, and the trial judge, by charging the jury regarding his refusal to take a breathalyzer test, erred in their injecting of facts before the jury not contained in the evidence. By virtue of our disposition of defendant's third argument, this argument has no merit.

For the reasons stated above, in defendant's trial, we find

No error.

Judge BECTON concurs.

Judge HEDRICK concurs in result only.