STATE OF NORTH CAROLINA v. JAMES ALFRED MACK

No. 855SC1075

(Filed 1 July 1986)

1. Criminal Law § 75.9— volunteered statement—admissibility

In a prosecution of defendant for driving while impaired, the trial court was not required to exclude testimony by the arresting officer about a statement made by defendant while in custody before he was informed of his *Miranda* rights, since his statement to the effect that he fell asleep at the wheel and ran off the road into a fence was the result of routine booking questions, such as defendant's social security number, and the officer's inquiry was not such that he could have reasonably anticipated a self-incriminatory answer.

2. Automobiles § 127.1— driving while impaired—sufficiency of evidence

In a prosecution of defendant for driving while impaired, evidence was sufficient to be submitted to the jury where it tended to show that defendant stated to a police officer that, "All I did was I fall—I fell asleep and ran over there to the fence"; an officer arrived at the scene approximately four minutes after being dispatched there; he observed the headlights of the car on, the key in the ignition, the warm hood, the defendant asleep in the driver's seat, and the nearly empty bottle of Canadian Mist on the floorboard; the officer had trouble rousing defendant and detected a strong odor of alcohol on defendant's person both inside the car and out; defendant was unsteady on his feet and his speech was slightly slurred; and defendant's blood alcohol level was .16 approximately one hour after the officer found him asleep in his car.

3. Automobiles § 130; Criminal Law § 138.6— driving while impaired—two aggravating factors found—evidence to support only one factor—resentencing required

Where the only evidence beyond that necessary to prove impaired driving was that defendant fell asleep and ran off the road, such evidence was not sufficient to support both the especially dangerous and the especially reckless aggravating factors, and the trial court erred in finding both. Because it could not be said whether the trial court would have imposed a lesser punishment after weighing the one aggravating factor against the one mitigating factor (defendant's safe driving record) pursuant to N.C.G.S. § 20-179(f)(3), the case must be remanded for resentencing.

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 23 May 1985 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 12 February 1986.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*William Joseph Boney, Jr., for defendant appellant.*

State v. Mack

BECTON, Judge.

I

Defendant, James Alfred Mack, was convicted of driving while impaired under N.C. Gen. Stat. Sec. 20-138.1 (1983) and given a four-month suspended sentence and a two-day active sentence. We affirm the conviction, but remand for resentencing.

On 19 January 1985, at approximately 8:30 a.m., Police Officer Long found defendant asleep or unconscious in a car off the road near McLumber Lane. Officer Long testified that defendant's car was sitting on top of a chain link fence approximately forty-five feet from the road. He noticed that the car's headlights were on, the key was in the ignition, and the hood was warm. Officer Long attempted to rouse defendant and, after tapping on the window, opened the door and shook the defendant. After several minutes, the defendant woke up. Officer Long asked defendant what had happened, and the defendant replied, "What happened?" Officer Long then asked defendant for his driver's license. He observed a bottle of Canadian Mist on the front passenger side floorboard of the vehicle with its seal broken and much of its contents missing. He also detected a strong odor of alcohol about the defendant, observed that defendant was unsteady on his feet and that defendant's speech was slurred. He formed an opinion that defendant was impaired and placed him under arrest. Defendant was transported to the police station for a breathalyzer test. Officer Long testified that in response to "questions with reference to a social security number and so forth," defendant stated, "All I did was, I fall—I fell asleep and ran over there to the fence." Defendant denied making this statement at trial.

Officer Long testified that he then advised defendant of his *Miranda* rights and asked the defendant what happened. Defendant replied that all he remembered was that he fell asleep. Defendant submitted to a breathalyzer test, which revealed a blood-alcohol level of 0.16.

The defendant's motions to dismiss the DWI charge at the close of the State's evidence and at the close of all the evidence were denied.

## II

[1]   The defendant assigns error to the trial court's failure, *ex mero motu*, to exclude or suppress the testimony of Officer Long about the statement defendant made while in custody and before he was informed of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). The State argues that because the defendant failed to object at trial, he has waived his right to do so now. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976); *State v. Hopper*, 292 N.C. 580, 234 S.E. 2d 580 (1977). This is true unless use of the now-objected to testimony constitutes "plain error" within the meaning of *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) or *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983). That is, when the error "amounts to a denial of a fundamental right of the accused," it will be noticed by the appellate courts. *Black*, 308 N.C. at 740, 303 S.E. 2d at 806-07 (quoting *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir. 1982), *cert. denied*, 459 U.S. 1018, 74 L.Ed. 2d 513, 103 S.Ct. 381 (1982) ).

*Miranda* warnings are required when the defendant is being subjected to a custodial interrogation. *State v. Sykes*, 285 N.C. 202, 205, 203 S.E. 2d 849, 851 (1974). The United States Supreme Court has defined interrogation under *Miranda* to "refer not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed. 2d 297, 308, 100 S.Ct. 1682, 1689-90 (1980), *on remand sub nom., State v. Innis*, 433 A. 2d 646 (R.I. 1981), *cert. denied sub nom., Innis v. Rhode Island*, 456 U.S. 930, 72 L.Ed. 2d 447, 102 S.Ct. 1980 (1982), *amended*, 456 U.S. 942, 72 L.Ed. 2d 464, 102 S.Ct. 2005 (1982).

The North Carolina Supreme Court has adopted the *Innis* analysis and definition of interrogation, holding that interrogation does not include routine informational questions posited to a defendant during the booking process. *See State v. Ladd*, 308 N.C. 272, 286, 302 S.E. 2d 164, 173 (1983). The *Ladd* Court was quick to emphasize, however, that it did not construe this limited exception to include any and all questions asked during the booking process, because, as the Court reasoned:

. . . Such a rule would totally emasculate the *Miranda* protections and render meaningless the defendant's rights to remain silent and to have the presence of counsel. If all questions asked during booking were free from *Miranda* proscriptions, police officials could quiz the defendant about any subject so long as they timed their queries to coincide with the incidence of booking, regardless of whether the defendant had been given the *Miranda* warnings, whether he had invoked his right to remain silent or whether he had previously asked for an attorney. We therefore limit this exception to *routine informational* questions necessary to complete the booking process that are *not* "reasonably likely to elicit an incriminating response" from the accused.

308 N.C. at 287, 302 S.E. 2d at 173 (quoting *Rhode Island v. Innis*, 446 U.S. at 301, 64 L.Ed. 2d at 308, 100 S.Ct. at 1689-90 (1980)).

Therefore, we must decide under the particular facts of this case, whether a question constitutes interrogation within the *Innis* definition because it was "reasonably likely to elicit an incriminating response." There is no doubt that the defendant in the case *sub judice* was in custody at the time he allegedly made the incriminating statement. And Officer Long testified that defendant made the statement not at the scene of the accident but at the police station in response to routine questions. Only after defendant allegedly made the incriminating statement did Officer Long advise him of his *Miranda* rights.

We are satisfied that defendant's statement was not the product of a custodial interrogation during which he was deprived of his constitutional rights under *Miranda*, and that his statement was therefore admissible. The *Innis* Court was aware of the danger implicit in limiting the ambit of *Miranda* to express questioning, thereby "plac[ing] a premium on the ingenuity of the police to devise methods of indirect interrogation, rather than to implement the plain mandate of *Miranda.*" *Innis*, 446 U.S. at 299 n.3, 64 L.Ed. 2d at 307 n.3, 100 S.Ct. at 1689 n.3 (quoting *Commonwealth v. Hamilton*, 445 Pa. 292, 297, 285 A. 2d 172, 175 (1971)). Although refusing to so limit their holding, the *Innis* Court recognized that "the police surely cannot be held accountable for the unforeseeable results of their words or actions. . . ." *Innis*, 446 U.S. at 301-02, 64 L.Ed. 2d at 308, 100 S.Ct. at 1690. One

such unforeseeable result is when a defendant simply blurts out an inculpatory statement without encouragement, prodding, or manipulation by the police.

In the instant case, we construe defendant's inopportune response to the officer's routine booking questions as a "spontaneous utterance." *See State v. Sellers*, 58 N.C. App. 43, 48, 293 S.E. 2d 226, 229, *disc. rev. denied and appeal dismissed*, 306 N.C. 749, 295 S.E. 2d 485 (1982). It was not the kind of query to which the officer could have reasonably anticipated a self-incriminatory answer. *See Ladd*, 308 N.C. at 281, 302 S.E. 2d at 170. We find no error in the trial court's failure to suppress this statement.

## III

[2]  Defendant's next three assignments of error involve the sufficiency of the evidence, and we will consider them together. Defendant asserts that the State's case fails to disclose (1) that the defendant operated the vehicle within the meaning of N.C. Gen. Stat. Sec. 20-4.01(25) (1983), (2) when and if the defendant parked the car where it was found, and (3) that the defendant had consumed the alcohol in his system prior to stopping the car (if he did stop it).

Defendant was charged with a violation of G.S. Sec. 20-138.1, which provides:

. . . A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this state:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more.

When a motion for dismissal questions the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. *State v. Snead*, 295 N.C. 615, 247 S.E. 2d 893 (1978). Since defendant waived his right to assert the denial of his motion for dismissal at the close of the State's case by presenting evidence at trial, we need only consider now the motion to dis-

miss made at the close of all the evidence. *State v. Dow*, 70 N.C. App. 82, 318 S.E. 2d 883 (1984).

All evidence admitted must be considered by the trial court in the light most favorable to the State, and any discrepancies are to be resolved in favor of the State. *State v. Powell*, 299 N.C. 95, 101, 261 S.E. 2d 114, 117 (1980). All that is required before the court can send the case to the jury is substantial evidence of guilt. *Id.*

We have already held that defendant's inculpatory statement was properly admitted. That statement was the only direct evidence that defendant was driving and ran off the road into the fence. The officer arrived at the scene approximately four minutes after being dispatched there. He observed the headlights of the car on, the key in the ignition, the warm hood, the defendant asleep in the driver's seat, and the near-empty bottle of Canadian Mist on the floorboard. The direct and circumstantial evidence was sufficient  to allow a reasonable jury to infer that defendant drove the vehicle on a public street.

The officer further testified that he had difficulty rousing defendant, that he detected a strong odor of alcohol upon defendant's person both inside the car and out, that the defendant was unsteady on his feet and his speech slightly slurred. Defendant's blood-alcohol level was 0.16 approximately an hour after Officer Long found him. This was sufficient, in conjunction with the other evidence outlined above, for a reasonable jury to infer that defendant was under the influence of an impairing substance when he drove the vehicle.

There are numerous possible other scenarios, and the one which defendant advances is plausible, if not supported by much of the evidence. But,

> to hold that the trial court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of facts. . . . Proof of guilt beyond a reasonable doubt is required before the jury can convict. . . . What the evidence proves or fails to prove is a question of fact for the jury.

*Powell,* 299 N.C. at 101, 261 S.E. 2d at 118-19 (quoting *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956) ).

Defendant also argues that the trial court should have set aside the verdict as being against the greater weight of the evidence, although defendant made no timely motion to do so. Defendant incorporates his arguments as to the trial court's failure to grant his motion to dismiss, and asserts that it was plain error not to set aside the verdict. We do not agree.

Motions to set aside the verdict are addressed to the discretion of the trial court, and refusal to grant the motion is not reviewable on appeal absent an abuse of discretion. *State v. Boykin,* 298 N.C. 687, 259 S.E. 2d 883 (1979), *cert. denied,* 446 U.S. 911, 64 L.Ed. 2d 264, 100 S.Ct. 1841 (1980). Failure to set aside the verdict *ex mero motu* would be reviewable only in the situation in which the jury's verdict is manifestly unjust and against the greater weight of the evidence. If there is sufficient evidence to support the verdict, the trial judge has acted within his or her discretion in denying the motion, or in failing to act *sua sponte* to set it aside. *See State v. Leigh,* 278 N.C. 243, 179 S.E. 2d 708 (1971).

The State offered substantial evidence of defendant's guilt, and defendant offered no corroboration of his own testimony. The evidence was sufficient to justify the jury's verdict.

IV

[3] Defendant's final assignment of error relates to the trial court's finding, in aggravation of the sentence, that defendant's driving was "especially reckless" and "especially dangerous," and the imposition of a Level Four punishment. Because the trial court found as a mitigating factor that defendant had a safe driving record, defendant could have received a Level Five punishment if the trial court were to find that the mitigating factors substantially outweighed any aggravating factors. *See* N.C. Gen. Stat. Sec. 20-179(f)(2) and (3) (1983).

Because G.S. Sec. 20-179 does not explicitly set out the legislature's intent with respect to the definition of, or evidence necessary to support, these aggravating factors, we have chosen to look for guidance to the Fair Sentencing Act, N.C. Gen. Stat. Sec. 15A-1340.4(a)(1) (1983), and to the plain meanings and defini-

tions of these terms. G.S. Sec. 15A-1340.4(a)(1) states in pertinent part:

> Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, and the same item of evidence may not be used to prove more than one factor in aggravation.

"Dangerous" as defined in Black's Law Dictionary 471 (4th ed. 1951) is: "attended with risk; perilous; hazardous; unsafe," and in The American Heritage Dictionary of the English Language 334 (7th ed. 1978) as, "able or apt to do harm." "Reckless" is defined in *Black's* at 1435 as, "careless; heedless; inattentive; indifferent to consequences" and in *American* at 1088 as, "uncontrolled, wild."

We believe that the legislature wrote this aggravating factor in the disjunctive, ("[e]specially reckless or dangerous driving") intending that evidence of either especially reckless or especially dangerous driving was enough to support one aggravating factor. *See* G.S. Sec. 20-179(d)(2). However, in AOC Form CR-311, which the trial court used in the instant case, these factors are listed separately as aggravating factors numbers 3 and 4. In keeping with the reasoning of the Fair Sentencing Act quoted above, there would need to be at least one item of evidence not used to prove either an element of the offense or any other factor in aggravation to support each additional aggravating factor.

Impaired driving is in and of itself "reckless" and "dangerous." Therefore, to determine whether there was enough evidence to prove the defendant's driving was both "especially reckless" and "especially dangerous," we must focus on whether the facts of this case disclose excessive aspects of recklessness and of dangerousness not normally present in the offense of impaired driving to support two separate aggravating factors. This the evidence fails to do.

The only evidence beyond that necessary to prove impaired driving was that defendant fell asleep and ran off the road. Although we do not believe that this was enough evidence to support *both* the especially dangerous and the especially reckless aggravating factors, we do find that falling asleep while driving is at least especially dangerous. However, because we cannot say

whether the trial court would have imposed a Level Five punishment after weighing this one aggravating factor against the one mitigating factor (defendant's safe driving record) per G.S. Sec. 20-179(f)(3), we must remand this case to the trial court for resentencing.

Remanded for resentencing.

Judges JOHNSON and MARTIN concur.