DAVIS, Judge.
 

 This case presents the issues of whether (1) the State must affirmatively prove that a vehicle was "readily mobile" in order for the "automobile exception" to permit a warrantless search under the Fourth Amendment; and (2)
 
 Miranda
 
 warnings are required before a law enforcement officer may read aloud the charges against two arrestees in each other's presence. Kendrick Tarrell Burton ("Defendant") appeals from his conviction of felony possession of cocaine. On appeal, he contends that the trial court erred in admitting both the cocaine discovered as the result
 
 *67
 
 of a search of his vehicle and the incriminating statement he made while in custody. Alternatively, he contends that he was denied his right to effective assistance of counsel. After careful review, we conclude that Defendant received a fair trial free from error.
 

 Factual and Procedural Background
 

 The State presented evidence at trial tending to establish the following facts: On 18 February 2014, Officer Joshua Kingry of the Asheville Police Department was patrolling an area in downtown Asheville, North Carolina. At approximately 9:10 p.m., Officer Kingry was driving on Water Street when he smelled a strong odor of marijuana. He got out of his car to investigate the source of the odor. He determined that the odor was coming from a silver Honda Civic-which was later determined to be registered to Defendant-parked on the side of the street. As Officer Kingry walked up to the vehicle, he noticed a man-later determined to be Cortez Duff-sitting in the passenger seat with a "tray in his lap ... [with] marijuana ... on the tray[.]"
 

 Officer Kingry told Duff to exit the vehicle, searched him, and found a set of digital scales in Duff's pocket. While Officer Kingry was talking to Duff, Defendant came out of the house adjacent to the area where the vehicle was parked. Defendant asked why Officer Kingry was searching Duff, and Officer Kingry responded that he had smelled marijuana and found Duff in possession of marijuana in the car. Defendant told Officer Kingry that he "couldn't search based on the odor of marijuana" and that Defendant needed to get his wallet out of the vehicle.
 

 Officer Kingry directed both Defendant and Duff to sit on the hood of the car while he searched the vehicle. During his search, he found Defendant's wallet as well as a Mason jar containing marijuana. In addition, Officer Kingry located a black sock with two plastic bags inside of it, each containing a substance he recognized to be crack cocaine.
 

 Officer Kingry placed Defendant and Duff under arrest and took them to the Buncombe County Detention Center. After arrest warrants had been issued, Officer Kingry read both warrants aloud to Defendant and Duff in each other's presence. As Officer Kingry finished reading the charges, Defendant told Officer Kingry that Duff "shouldn't be charged with the cocaine because it was [Defendant's]." Defendant was subsequently indicted for possession with intent to sell or deliver cocaine.
 

 A jury trial was scheduled to begin in Buncombe County Superior Court on 10 November 2015. That same day, Defendant's counsel filed a motion to suppress the evidence that had been obtained from his car.
 
 [1]
 
 The motion stated, in pertinent part, as follows:
 

 According to the State's Discovery, my client was detained on 2/14/2014 on or about 26 Water Street, Asheville, N.C. He was detained because Asheville Police Officer Kingry said that he stopped and when he smelled the odor of marijuana coming from a parked car, owned by my client and occupied by Corteze [sic] Lamont Duff. Officer Kingry reported seeing Marijuana in the lap of Mr. Duff who he detained. He also detained my client when he came out to his car to try and retrieve his wallet. The defendant objects to being detained, arrested, searched, and having his car searched. He denies voluntarily consenting to any searches.
 

 A hearing on Defendant's motion was held before the Honorable Marvin P. Pope, Jr. Defendant's attorney stated the following to the trial court regarding the motion: "Your Honor, frankly I'm not sure my client has standing to object to the beginning of the detention, but I think he might. He wanted me to object to it, but I don't think it's a strong argument."
 

 The trial court denied Defendant's motion to suppress, and Defendant's trial began. The jury ultimately found Defendant guilty of felony possession of cocaine. Defendant was sentenced to 5 to 15 months imprisonment. His sentence was suspended, and he was placed on supervised probation for 18
 
 *68
 
 months. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 I. Preservation of Issues for Appeal
 

 Defendant argues that the trial court erred in allowing the State to introduce into evidence the cocaine found in the vehicle because, he contends, the search of his car violated his rights under the Fourth Amendment. He also challenges the admission of his statement to Officer Kingry that the cocaine in the vehicle belonged to him on the theory that the introduction of this evidence violated his rights under the Fifth Amendment. However, Defendant concedes in his brief that his trial counsel did not object to any of this evidence at trial.
 

 Our Supreme Court has held that
 

 [t]o preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial. [Defendant's] failure to object at trial waived his right to have this issue reviewed on appeal. This assignment of error is overruled.
 

 State v. Golphin
 
 ,
 
 352 N.C. 364
 
 , 463,
 
 533 S.E.2d 168
 
 , 232 (2000) (citations omitted),
 
 cert. denied
 
 ,
 
 532 U.S. 931
 
 ,
 
 121 S.Ct. 1379
 
 , 1380,
 
 149 L.Ed. 2d 305
 
 (2001).
 

 Thus, Defendant has failed to preserve these issues for appellate review.
 
 See
 

 id.
 
 at 465,
 
 533 S.E.2d at 234
 
 ("As [defendant] did not object, he has failed to preserve these assignments of error for appellate review.").
 

 Nor is Defendant entitled to review of these issues for plain error. It is well established that this Court will conduct plain error review only where the defendant specifically makes a plain error argument in his appellate brief.
 
 See
 

 State v. Dennison
 
 ,
 
 359 N.C. 312
 
 , 312-13,
 
 608 S.E.2d 756
 
 , 757 (2005) (where "defendant did not 'specifically and distinctly' allege plain error as required by North Carolina Rule of Appellate Procedure 10(c)(4), defendant [was] not entitled to plain error review" (citation omitted)). Here, Defendant has failed to "specifically and distinctly" argue plain error in his brief, and-for this reason-he is not entitled to plain error review.
 
 See
 

 Golphin
 
 ,
 
 352 N.C. at 465
 
 ,
 
 533 S.E.2d at 234
 
 (because defendant "did not 'specifically and distinctly' argue plain error ... these assignments of error are overruled" (internal citation omitted)).
 

 II. Ineffective Assistance of Counsel
 

 Defendant contends, alternatively, that he was denied effective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense."
 
 State v. Phillips
 
 ,
 
 365 N.C. 103
 
 , 118,
 
 711 S.E.2d 122
 
 , 135 (2011) (citation and quotation marks omitted),
 
 cert. denied
 
 ,
 
 565 U.S. 1204
 
 ,
 
 132 S.Ct. 1541
 
 ,
 
 182 L.Ed. 2d 176
 
 (2012).
 

 Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 

 State v. Allen
 
 ,
 
 360 N.C. 297
 
 , 316,
 
 626 S.E.2d 271
 
 , 286 (internal citations and quotation marks omitted),
 
 cert. denied
 
 ,
 
 549 U.S. 867
 
 ,
 
 127 S.Ct. 164
 
 ,
 
 166 L.Ed.2d 116
 
 (2006).
 

 In general, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal. It is well established that ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing. Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice,
 
 *69
 
 allowing defendants to bring them pursuant to a subsequent motion for appropriate relief in the trial court.
 

 State v. Turner
 
 ,
 
 237 N.C.App. 388
 
 , 395,
 
 765 S.E.2d 77
 
 , 83 (2014) (internal citations, quotation marks, and brackets omitted),
 
 disc. review denied
 
 ,
 
 368 N.C. 245
 
 ,
 
 768 S.E.2d 563
 
 (2015). However, "[i]n considering ineffective assistance of counsel claims, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient."
 
 Id.
 
 at 396,
 
 765 S.E.2d at 84
 
 (citation and brackets omitted).
 

 Defendant argues that his trial counsel's representation was ineffective because he failed to object at trial to the admission of either (1) the cocaine obtained from Defendant's car; or (2) his incriminating statement admitting that the cocaine belonged to him rather than to Duff. We address each of these issues in turn.
 

 A. Discovery of Cocaine Inside Defendant's Vehicle
 

 Defendant contends that his trial counsel should have objected on Fourth Amendment grounds to the admission of the cocaine obtained during Officer Kingry's warrantless search of his vehicle. Defendant asserts that because the State did not prove that Defendant's car was "readily mobile," a warrantless search of the vehicle was not permitted under the Fourth Amendment. We disagree.
 

 It is well established that "[p]ursuant to the so-called 'automobile exception' to the warrant requirement, a search warrant is not a prerequisite to the carrying out of a search of a motor vehicle as long as the officer has probable cause to search."
 
 State v. Corpening
 
 ,
 
 109 N.C.App. 586
 
 , 589,
 
 427 S.E.2d 892
 
 , 894 (1993). The United States Supreme Court has explained that the automobile exception to the Fourth Amendment's protection against warrantless searches and seizures "has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation."
 
 California v. Carney
 
 ,
 
 471 U.S. 386
 
 , 394,
 
 105 S.Ct. 2066
 
 ,
 
 85 L.Ed.2d 406
 
 , 415 (1985).
 

 While appearing to concede that the automobile exception would normally apply to the facts of this case, Defendant argues that the exception is inapplicable here because the State failed to prove that Defendant's vehicle was "readily mobile." In making this argument, Defendant cites our Supreme Court's decision in
 
 State v. Isleib
 
 ,
 
 319 N.C. 634
 
 ,
 
 356 S.E.2d 573
 
 (1987).
 

 In
 
 Isleib
 
 , an officer observed the defendant driving a vehicle, and based on an informant's tip, the officer conducted a warrantless search of the vehicle without the defendant's consent.
 

 Id.
 

 at 638
 
 ,
 
 356 S.E.2d at 576-77
 
 . The officer did not see any contraband in plain view, but upon searching a pocketbook in the vehicle, he found a bag of marijuana. The defendant filed a motion to suppress the evidence, arguing that her Fourth Amendment rights were violated as a result of the warrantless search. The trial court granted her motion, and we affirmed.
 

 Id.
 

 at 636
 
 ,
 
 356 S.E.2d at 575
 
 .
 

 The Supreme Court reversed our decision, holding that the search of the vehicle fell within the automobile exception to the warrant requirement.
 

 Id.
 

 at 637
 
 ,
 
 356 S.E.2d at 575
 
 . The court held that
 

 [t]he so-called "automobile exception" to the warrant requirement ... is founded upon two separate but related reasons: the inherent mobility of motor vehicles which makes it impracticable, if not impossible, for a law enforcement officer to obtain a warrant for the search of an automobile while the automobile remains within the officer's jurisdiction and the decreased expectation of privacy which citizens have in motor vehicles, which results from the physical characteristics of automobiles and their use.
 

 Id.
 

 at 637
 
 ,
 
 356 S.E.2d at 575-76
 
 (internal citations omitted).
 

 Defendant attempts to characterize
 
 Isleib
 
 as standing for the proposition that where an officer does not actually see a vehicle being driven, the vehicle cannot be deemed "readily
 
 *70
 
 mobile" for purposes of the automobile exception. However, no such proposition was stated by our Supreme Court in
 
 Isleib
 
 . Nor has Defendant cited to any other case expressly holding that the State must prove a vehicle was actually capable of movement at the time an officer conducted a warrantless search of it where the vehicle's appearance gave no indication it was incapable of being driven.
 
 [2]
 

 In the present case, the record establishes that Officer Kingry observed Defendant's car parked on the street next to his residence. No evidence was presented at trial suggesting that the vehicle was actually incapable of movement at the time it was searched by Officer Kingry.
 
 [3]
 

 Therefore, Defendant has failed to offer any persuasive argument that an objection by his trial counsel on this ground would have been successful. Accordingly, he has failed to show prejudice for purposes of his ineffective assistance of counsel claim.
 
 See
 

 State v. Roache
 
 ,
 
 358 N.C. 243
 
 , 326,
 
 595 S.E.2d 381
 
 , 433 (2004) (rejecting ineffective assistance of counsel claim where defendant failed to show prejudice).
 

 B. Incriminating Statement
 

 Defendant next argues that his trial counsel provided ineffective assistance by failing to object to the admission of his statement to Officer Kingry that the cocaine belonged to him rather than Duff. He contends that this statement was obtained in violation of his Fifth Amendment rights because Officer Kingry failed to advise him of his
 
 Miranda
 

 [4]
 
 rights before reading the two warrants to him and Duff in each other's presence.
 

 The warnings required by
 
 Miranda
 
 "appl[y] only in the situation where a defendant is subject to custodial interrogation."
 
 State v. Barden
 
 ,
 
 356 N.C. 316
 
 , 337,
 
 572 S.E.2d 108
 
 , 123 (2002) (citation omitted),
 
 cert. denied
 
 ,
 
 538 U.S. 1040
 
 ,
 
 123 S.Ct. 2087
 
 ,
 
 155 L.Ed.2d 1074
 
 (2003). Here, the State does not dispute that Defendant was in custody at the time the warrants were read to him and Duff. Thus, the remaining question is whether Defendant's statement was made during interrogation.
 

 Both the United States Supreme Court and this Court have held that during a custodial interrogation, if the accused invokes his right to counsel, the interrogation must cease and cannot be resumed without an attorney being present.... The term 'interrogation' is not limited to express questioning by law enforcement officers, but also includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.
 

 Golphin
 
 ,
 
 352 N.C. at 406
 
 ,
 
 533 S.E.2d at 199
 
 (internal citations and quotation marks omitted).
 

 This Court has held that "[f]actors that are relevant to the determination of whether police should have known their conduct was likely to elicit an incriminating response include: (1) the intent of the police; (2) whether the practice is designed to elicit an incriminating response from the accused; and (3) any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion[.]"
 
 State v. Fisher
 
 ,
 
 158 N.C.App. 133
 
 , 142-43,
 
 580 S.E.2d 405
 
 , 413 (2003) (citation and quotation marks omitted),
 
 aff'd per curiam
 
 ,
 
 358 N.C. 215
 
 ,
 
 593 S.E.2d 583
 
 (2004).
 

 The State contends that Defendant's statement was spontaneous rather than the result of interrogation. It is well established
 
 *71
 
 that "[s]pontaneous statements made by an individual while in custody are admissible despite the absence of
 
 Miranda
 
 warnings."
 
 State v. Lipford
 
 ,
 
 81 N.C.App. 464
 
 , 468,
 
 344 S.E.2d 307
 
 , 310 (1986). North Carolina courts have applied this principle on a number of occasions.
 

 For example, in
 
 State v. Mack
 
 ,
 
 81 N.C.App. 578
 
 ,
 
 345 S.E.2d 223
 
 (1986), the defendant was found asleep in a car that had driven off the road and come to a stop on top of a fence. When a police officer approached the car, he smelled a strong odor of alcohol and saw a bottle of whisky on the front passenger side floorboard. After the officer transported the defendant to the police station, the officer asked him "questions with reference to a social security number."
 
 Id.
 
 at 579,
 
 345 S.E.2d at 224
 
 (quotation marks omitted). The defendant responded, "All I did was ... I fell asleep and ran over there to the fence."
 

 Id.
 

 The defendant moved to suppress this statement, and the trial court denied the motion.
 
 Id.
 
 at 579-80,
 
 345 S.E.2d at 224
 
 . On appeal, this Court determined that because the officer could not "have reasonably anticipated a self-incriminatory answer" in response to questions regarding the defendant's social security information, "we construe defendant's inopportune response to the officer's routine booking questions as a 'spontaneous utterance.' "
 
 Id.
 
 at 582,
 
 345 S.E.2d at 225
 
 .
 

 Similarly, in
 
 State v. Frazier
 
 ,
 
 142 N.C.App. 361
 
 ,
 
 542 S.E.2d 682
 
 (2001), a police officer found drugs in the defendant's hotel room. At trial, the officer was asked by the prosecutor whether the defendant made any statements while in the hotel room. The officer testified that the defendant had stated that "there were no other drugs in the room."
 
 Id.
 
 at 364,
 
 542 S.E.2d at 685
 
 . The defendant's counsel moved to suppress the officer's testimony regarding the defendant's statement, arguing that it was obtained in violation of his
 
 Miranda
 
 rights. The trial court denied the motion.
 
 Id.
 
 at 364,
 
 542 S.E.2d at 685
 
 .
 

 This Court affirmed the trial court's denial of the motion to suppress the defendant's statement. We held that "[s]pontaneous statements made by an individual while in custody are admissible despite the absence of Miranda warnings."
 
 Id.
 
 at 369,
 
 542 S.E.2d at 688
 
 (citation and quotation marks omitted). Because there was "no evidence from the record Defendant's statement was made in response to any question posed by the officers[,]" we concluded that the utterance was a "spontaneous statement, not made in response to the officers' prompting, and thus ... admissible despite the absence of
 
 Miranda
 
 warnings."
 
 Id.
 
 at 370,
 
 542 S.E.2d at
 
 689 ;
 
 see also
 

 State v. Sellers
 
 ,
 
 58 N.C.App. 43
 
 , 48,
 
 293 S.E.2d 226
 
 , 229 (where defendant told officer "I'm drunk. I would maybe blow a thirty [on a breathalyzer test,]" the statement was spontaneous such that no
 
 Miranda
 
 warning was required),
 
 disc. review denied
 
 ,
 
 306 N.C. 749
 
 ,
 
 295 S.E.2d 485
 
 (1982).
 

 We are likewise satisfied in the present case that Defendant's admission to Officer Kingry is properly classified as a spontaneous statement. N.C. Gen. Stat. § 15A-501 provides, in pertinent part, that "[u]pon the arrest of a person, with or without a warrant ... a law-enforcement officer: (1) Must inform the person arrested of the charge against him or the cause for his arrest." N.C. Gen. Stat. § 15A-501 (2015) ;
 
 see also
 
 N.C. Gen. Stat. § 15A-401(c)(2) (2015).
 

 Here, the State argues that Officer Kingry's act of reading Defendant's and Duff's charges to both of them at the same time was consistent with his statutory obligation to inform them of the charges against them. While Defendant argues that it is not a common practice for an officer to inform multiple arrestees of the charges against them in the presence of one another, he has failed to cite any legal authority condemning this practice as unlawful. Moreover, Defendant has also failed to show (1) any awareness by Officer Kingry of a personal relationship between Defendant and Duff so as to have led him to believe that upon hearing the charges against Duff, Defendant was likely to make an inculpatory statement; or (2) that his reading of the charges in this manner was a practice designed to improperly elicit incriminating statements from defendants. Therefore, no
 
 Miranda
 
 warning was required under these circumstances.
 

 *72
 
 Accordingly, Defendant has once again failed to show any prejudice arising from his trial counsel's actions. Therefore, we are unable to conclude that Defendant received ineffective assistance of counsel.
 
 See
 

 State v. Givens
 
 , --- N.C. App. ----, ----,
 
 783 S.E.2d 42
 
 , 49 (2016) ("Accordingly, defendant's argument that he received ineffective assistance of counsel and is entitled to a new trial is overruled.").
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Judges CALABRIA and TYSON concur.
 

 [1]
 

 We note that the record does not indicate that Defendant ever made a motion to suppress the statement he made at the detention center to Officer Kingry.
 

 [2]
 

 Defendant cites a number of decisions applying the automobile exception in which the court mentions as part of the factual summary of the case that the vehicle was observed by an officer while it was being driven. However, we reject Defendant's attempt to extrapolate from these cases a rule that an officer
 
 must
 
 actually see the vehicle being driven before the automobile exception can apply.
 

 [3]
 

 While there was testimony that Defendant's car was towed following his arrest, there was no explanation given for the towing, and we lack any basis for concluding that the vehicle was towed because it was inoperable.
 

 [4]
 

 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966).