Max Bloom, J.
Defendant, by two indictments which have been consolidated for trial, was indicted on three counts of criminal sale of a controlled substance in the third degree, three counts of criminal possession of a controlled substance in the third degree, three counts of criminal possession of a controlled substance in the seventh degree and one count of criminal impersonation. The nine controlled substance counts arose by reason of three separate sales allegedly made by defendant to police undercover officers on February 25, 27 and 28, 1975. The criminal impersonation count flowed from representations made to the police in connection with pedigree information furnished at the time of his arrest on March 20, 1975. At that time, he informed the police that his name was Harold Grant and submitted documents to support the claim, including the draft and social security cards of Grant. Indeed, for many months, his name appeared as Grant on the calendar of this court.
Immediately prior to the commencement of the trial a motion was made to suppress the identification of the defendant by the undercover and other police officers under United States v Wade (388 US 218) and Gilbert v California (388 US *738 263). After hearing, that application was denied in part and granted in part, and the findings and conclusions dictated into the record (CPL 710.60, subds 4, 6).
Simultaneously, with the motion to suppress the identification, a motion was made for a Huntley hearing (People v Huntley, 15 NY2d 72, now codified in CPL 710.20, subd 3). It is conceded by the People that the police had not read the defendant his rights under Miranda v Arizona (384 US 436), and hence, that inculpatory statements, if made, were inadmissible and would not be offered. Defendant, however, is not satisfied with this concession. He desires also to exclude the pedigree statements. Inasmuch as these furnish the foundation for the charge of criminal impersonation, his desire to suppress these statements is thoroughly understandable.
In determining the thrust of Miranda and in evaluating its scope, it is necessary to bear in mind that it was concerned with the effect of custodial interrogation on Fifth Amendment rights. That amendment guarantees that no person may be compelled to be his own. accuser. To insure against police intrusion upon this constitutionally guaranteed privilege, statements made by a defendant during such custodial interrogation are excluded unless it is demonstrated that the requisite procedural safeguards have been employed. However, to bear witness against himself, the defendant must have already committed the act. To commit the act by the statement is not to bear witness to it. Thus, a witness, who is compelled to testify to criminal acts committed by him under a grant of immunity (CPL 50.20, subd 2) or under circumstances where immunity attaches as a matter of law, may not be prosecuted for the criminal acts to which he is compelled to testify. Nevertheless, a prosecution for perjury will lie if he willfully testifies falsely (People v Tomasello, 21 NY2d 143, 149; CPL 50.10, subd 1). "The immunity does not extend in futuro” (United States v Tramunti, 500 F2d 1334, 1344), nor does it confer a license to commit perjury (Glickstein v United States, 222 US 139, 142; United States v Tramunti, supra). .'
While the immunity-perjury rule is not directly in point, its analogy to the situation here presented is most persuasive. However, the Miranda rule may be phrased, its effect is to confer a testimonial quasi-immunity. The exclusion of admissions obtained in violation of the rule was never intended to permit a defendant to use it as a shield behind which he is *739 empowered to commit additional crimes (cf. Harris v New York, 401 US 222; People v Kulis, 18 NY2d 318).
Extensive research has not disclosed any case precisely in point. However, there is much authority to affirm the proposition that Miranda was never intended to apply to biographical data necessary to enable the police properly to charge a defendant (People v Rivera, 26 NY2d 304; People v Ryff, 27 NY2d 707; Richardson on Evidence [10th ed], § 543; McCormick on Evidence [2d ed], § 152; Farley v United States, 381 F2d 357, cert den 389 US 942; United States v Menichino, 497 F2d 935; cf. United States v Schipani, 414 F2d 1262; People v Hernandez, 69 Cal Rep 448; State v. Rassmussen, 92 Idaho 731; Clarke v State, 3 Md App 447). To the extent that Proctor v United States (404 F2d 819) may be deemed to be authority to the contrary, it is expressly rejected in People v Rivera (supra) and United States v Menichino (supra). "Asking a suspect for his name and address is neither intended nor likely to elicit information of a criminal nature. The police are certainly entitled to make a reasonable inquiry as to the identity of the person they have taken into custody without the necessity of formal warnings.” (People v Rivera, supra, p 309.)
None of the answers given by the defendant bear upon the crimes for which defendant was then in custody. The fact that these answers are alleged to be the basis for a new and an additional crime does not bring them within the ambit of Miranda. Indeed, the mere proof that defendant gave the police a name other than his own, standing alone, would be insufficient to establish the crime charged. Under our law "a man can change his name in good faith and for an honest purpose, by adopting a new one and * * * transacting his business and holding himself out to his friends and acquaintances thereunder, with their acquiescence and recognition” (Smith v United States Cas. Co., 197 NY 420, 423; see, also, Matter of Middleton, 60 Misc 2d 1056; Matter of Douglas, 60 Misc 2d 1057; Matter of Carol E. B., 81 Misc 2d 284; Matter of Thompson, 82 Misc 2d 460). The People will be required to demonstrate, in addition, that "the name given is that of a real person” (People v Gaissert, 75 Misc 2d 478, 479) and that the purpose of the impersonation was to obtain a benefit or to injure or defraud another (Penal Law, § 190.25, subd 1).
It follows that until the name of Harold Grant was given to the police by defendant in order to obtain a benefit or to injure or defraud another, there was no crime to which *740 Miranda rights could attach. Accordingly, the motion to suppress the pedigree statements made by defendant is denied without hearing.
Since the question is not before me, no endeavor is made to determine whether the count charging criminal impersonation is properly joinable with the controlled substance counts (CPL 200.20, subd 2).