OPINION OF THE COURT
Robert M. Mandelbaum, J.
Is it possible to steal the identity of a person who does not exist?
Charged by information with petit larceny and two counts of identity theft in the third degree, defendants each move to dismiss the accusatory instrument for facial insufficiency. The information alleges simply that “defendants opened at least one cellular account ... in the name of Avi Natanov” and that a named complaining witness “knows that neither defendant[’]s real name[ ] matches that of Avi Natanov.” The basis of such knowledge is not disclosed. This court previously rendered an oral decision granting defendants’ motions; this opinion serves to explain the basis for the court’s prior ruling.
In order to be sufficient on its face, an information must provide reasonable cause to believe that the defendant has committed the crime charged and contain nonhearsay allegations that, if true, establish every element of the crime and its commission by the defendant (see CPL 100.40 [1] [b], [c]). Reasonable cause to believe that a person has committed an offense “exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary *874 intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it” (CPL 70.10 [2]).
A person commits identity theft in the third degree when “he or she knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby” either “obtains goods, money, property or services or uses credit in the name of such other person or causes financial loss to such person or to another person or persons” (Penal Law § 190.78 [1]), or “commits a class A misdemeanor or higher level crime” (Penal Law § 190.78 [2]). Common to any third-degree identity theft charge (and defendants were each charged under both subdivisions) is the requirement that the defendant assume the identity of “another person.” This court concludes that “another person” means a real, identified person who actually exists (or existed).
“In matters of statutory construction, legislative intent is the great and controlling principle, and [the] proper judicial function is to discern and apply the will of the Legislature” (People v Allen, 92 NY2d 378, 383 [1998] [citations and internal quotation marks omitted]). Penal Law § 190.78 was enacted in 2002 as part of a comprehensive package of laws whose purpose was to protect and vindicate the rights of consumers actually victimized by the crime of identity theft (see L 2002, ch 619):[1]
“The United States Public Interest Research Group estimated that in 1995 banks lost approximately $90 million due to identity theft. That number continues to grow. The ‘big three’ consumer credit reporting agencies report that they receive hundreds of calls every day from identity theft victims. Some courts view the banks and other entities that issue credit as the only victims in these cases. Unfortunately, consumers who have been left with damaged reputations, bad credit reports and the resource- *875 consuming task of trying to correct the false credit record information, are also victims.
“This bill would remove . . . significant obstacles to prosecuting identity theft in New York [S]tate. Under current law, the credit card company, not the individual, is legally considered to be the victim in financial crimes of this nature . . . This bill would declare that consumers are, in fact, victims of identity theft and would entitle them to compensation for the consequences of ‘adverse actions’ against them” (Assembly Mem in Support, reprinted in 2002 McKinney’s Session Laws of NY at 2094; see also Budget Report on Bills at 2, Bill Jacket, L 2002, ch 619 at 5 [“This bill redefines victims of identity theft as those innocent people whose identity and information is actually stolen, and provides that defendants be required to make restitution to victims for any cost or loss incurred by the crime”]).
Thus, in requiring that a defendant prosecuted for identity theft have assumed the identity of “another person,” the legislature plainly contemplated criminal conduct committed against an actual victim — that is, an innocent person whose identity or information is actually stolen (efi CJI2d [NY] Penal Law § 190.78 [1], [2] [advising that jury be instructed as to name of specific person whose identity was allegedly assumed]).
After all,
“[t]he core of the basic third-degree identity theft offense, a class A misdemeanor, parallels the crime of ‘criminal impersonation in the second degree.’ That crime, also a class A misdemeanor, is committed when a person ‘impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another.’ ” (William C. Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.77 at 145, quoting Penal Law § 190.25 [1].)
And criminal impersonation requires that a “real person” have been impersonated (People v Sadiq, 236 AD2d 638, 639 [2d Dept 1997]; see also People v Powell, 59 AD2d 950 [2d Dept 1977]).
Simply put, to open a credit line in another person’s name constitutes identity theft, but to open one using a false name— *876 that is, an alias — does not.[2] To sustain an identity-theft charge in the absence of evidence that a real person’s identity was assumed would equate identity theft not with criminal impersonation, as the legislature intended, but with false personation, as the legislature did not.[3] Whatever other fraud-related charges might validly be pressed for using a fictitious name to obtain a financial benefit or to cause financial loss, such conduct does not constitute identity theft.
Here, the sole allegations are that defendants opened at least one cellular account in the name of Avi Natanov and that Avi Natanov is not the real name of either defendant. Of course, conduct equally compatible with guilt or innocence cannot supply reasonable cause (see People v Carrasquillo, 54 NY2d 248, 254 [1981]). If Avi Natanov were not a real person, but merely an alias, then no identity of “another person” would be stolen. Accordingly, in the absence of any evidentiary facts that Avi Natanov is a real person whose identity was improperly assumed by defendants — perhaps in the form of a supporting deposition from an Avi Natanov asserting that defendants had no permission or authority to open a cellular account in his name — the information fails to establish every element of the crime of identity theft.
Nor is the charge of petit larceny sufficiently pleaded. A person commits petit larceny when “he steals property” (Penal Law § 155.25) — that is, when, “with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property *877 from an owner thereof’ (Penal Law § 155.05 [1]). “Property” is defined as “any money, personal property, real property, computer data, computer program, thing in action, evidence of debt or contract, or any article, substance or thing of value . . . which is provided for a charge or compensation” (Penal Law § 155.00 [1]). By opening a cellular account in a false name, defendants may well have intended, and indeed attempted, to steal property. But absent an allegation that even a single telephone call was placed using the fraudulently opened account, or that a single charge was incurred, no one, including the telephone company, has been deprived of any money, property or thing of value, rendering the larceny charge insufficient, as well.
Accordingly, defendants’ motions to dismiss must be granted.

. In addition to criminalizing the theft of identity (and the possession of personal identification information), chapter 619 of the Laws of 2002 authorized restitution or reparation both for “victimfs]” of identity theft, defined as including “an individual whose identity was assumed or whose personal identifying information was used” or “any person who has suffered a financial loss as a direct result of’ identity theft (Penal Law § 60.27 [4] [b]), and for “any costs or losses incurred due to any adverse action taken against the victim” in a case of identity theft (Penal Law § 60.27 [1]).

. “Millions of consumers are victimized by [identity theft] every year. Generally speaking, there are two varieties of identity theft: the takeover or misuse of existing credit card, debit card, or other accounts (‘existing account fraud’); and the use of stolen information to open new accounts in the consumer’s name (‘new account fraud’). New account fraud, although less prevalent, typically causes considerably more harm to consumers in out-of-pocket expenses and time necessary to repair the damage” (Identity Theft: Innovative Solutions for an Evolving Problem, Prepared Statement of Federal Trade Commn before Subcomm on Terrorism, Technology, and Homeland Security of Senate Comm on Judiciary at 2-3 [Mar. 21,2007], available at http://www.ftc.gov/ os/testimony/P065409identitytheftsenate03212007.pdf [footnotes omitted] [accessed Dec. 7, 2012], cited in People v Essalek, 17 Misc 3d 835, 840-841 [Crim Ct, NY County 2007]).

. False personation, a class B misdemeanor, is committed when, after being informed of the consequences of such act, a person “knowingly misrepresents his or her actual name, date of birth or address to a police officer or peace officer with intent to prevent such . . . officer from ascertaining such information” (Penal Law § 190.23).