# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

HAKEEM M. EVANS,                    )
                                    )
          Defendant-Below,          )
          Appellant                 )
                                    )
v.                                  )        ID. No. 1705000032 (N)
                                    )
                                    )
STATE OF DELAWARE,                  )
                                    )
          Plaintiff-Below,          )
          Appellee.                 )

Submitted: January 17, 2019
Decided: April 30, 2019
Corrected: June 5, 2019

## OPINION

*Upon Appeal from the Court of Common Pleas of the State of Delaware
in and for New Castle County,*
**REVERSED.**

Benjamin S. Gifford, IV, Esquire, The Law Office of Benjamin S. Gifford, IV, Wilmington, Delaware, for Appellant, Hakeem M. Evans.

Julia C. Mayer, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee, the State of Delaware.

**WALLACE, J.**

## I. INTRODUCTION

"The more you look at 'common knowledge', the more you realise that it is more likely to be common than it is to be knowledge."[1] Since the adoption of our criminal impersonation statute, Delaware practitioners and jurists assumed that the State need only prove that one gave a false name to be convicted. The Court here must, for the first time, confront that precise assumption. That examination reveals that no matter what was once believed to be in the font of common Delaware criminal law knowledge, one cannot criminally impersonate a wholly fictitious person; the State must prove as an element of that statutory offense that a false name given is one belonging to "a human being who has been born and is alive."[2]

Hakeem M. Evans appeals his conviction for misdemeanor criminal impersonation. Evans' only contention on appeal is that, at his Court of Common Pleas trial, the State failed to prove beyond a reasonable doubt that he "impersonate[d] another person" when he verbally gave the police a name that was not his own. The Court must conclude here that he is right. And because there was insufficient evidence to support Evans' conviction of misdemeanor criminal impersonation, it must be **REVERSED.**

---

[1]    Idries Shah, Reflections 140 (7th ed. 1991).

[2]    DEL. CODE ANN. tit. 11, § 907(1) (2016) ("A person is guilty of criminal impersonation when the person . . . "[i]mpersonates another person . . ."); *id.* at § 222(21) ("'Person' means a human being who has been born and is alive").

## II. FACTUAL AND PROCEDURAL BACKGROUND

Just before midnight on April 30, 2017, New Castle County Police Officer Christopher Nikituk was dispatched to Stonebridge Boulevard in New Castle, Delaware, for a loud music complaint. Officer Nikituk found the reported vehicle and spoke to its two male occupants. One of the two was the Appellant Hakeem M. Evans. Officer Nikituk asked each man for his name, date of birth, phone number, and address. After some back-and-forth, Evans told the officer that his name was "Nasir Evans." Evans also provided a date of birth and phone number. Officer Nikituk searched the Delaware Criminal Justice Information System ("DELJIS"), but found no records for that name and date of birth.

Officer Nikituk asked Evans to identify himself once more. This time Evans told the officer that his name was "Johnny Roberts" and gave a different birthdate. Again Officer Nikituk searched DELJIS. Again he could find no records matching the information given. A second officer on-scene then ran the phone number Evans had first provided. That DELJIS search revealed Evans' true identity: Hakeem Evans, born August 23, 1994. That search also revealed that Evans had an open arrest warrant.

Evans was arrested and eventually charged by Criminal Information with one count of criminal impersonation.[3] He was tried before the Court of Common Pleas without a jury. The only trial evidence presented was Officer Nikituk's testimony. When he was asked to describe his attempt to identify Evans with the two false names provided, Officer Nikituk explained: "With both of those names specifically I don't know if the name actually populated or not. I know the pictures didn't match. Either the name didn't populate or the pictures did not match. It was one or the other."[4]

During closing argument, Evans' counsel posited that the State failed to meet its burden because it did not prove that the name Nasir Evans belonged to a real person which, he argued, is an element of criminal impersonation.[5] But, the trial court found Evans guilty of criminal impersonation, holding:

> [C]onsidering the totality of the circumstances I understand, but don't agree with, but understand [the] defense argument as to the requirement that . . . —the name given has to be an actual person. Actual person, meaning, according to the defense, a living, breathing person. That seems to be the argument, [an] identifiable [person] as opposed to nonidentifiable. I don't read the Statute in that manner. I think that it does damage to what the statute is intending to prove and how the Statute has been historically applied.[6]

---

[3]    Evans was charged with one count of criminal impersonation for providing the police with the name "Nasir Evans." He was not charged for providing the name "Johnny Roberts."

[4]    App. to Def's Opening Br. at A17 (Trial Transcript, June 26, 2017).

[5]    App. to Def's Opening Br. at A23-24.

[6]    *Id.* at A27-28.

-3-

Evans was sentenced to one year of imprisonment, suspended in whole for one year of non-reporting unsupervised probation. Execution of this sentence was stayed pending Evans' direct appeal.[7]

## III. STANDARD OF REVIEW

This Court takes criminal appeals from the Court of Common Pleas.[8] When considering such an appeal from the Court of Common Pleas, this Court functions in its position as an intermediate appellate court, "in the same manner as the Supreme Court."[9] So an appeal from a verdict of the Court of Common Pleas, sitting without a jury, "is upon both the law and the facts."[10] The Court reviews the trial court's factual findings to determine if they are "sufficiently supported by the record" and "the product of an orderly and logical deductive process."[11] And when considering on appeal the sufficiency of evidence to convict, the Court must discern "whether,

---

[7] C.C.P. Crim. R. 38(c) (providing that a sentence of probation may be stayed if an appeal from a Court of Common Pleas conviction is taken).

[8] DEL. CODE. ANN. tit 11, § 5301(c) (2018).

[9] *Layne v. State*, 2006 WL 3026236, at *1 (Del. Super. Ct. Sept. 26, 2006) (citing *Dickens v. State*, 2003 WL 22172737, at *3 (Del. Super. Ct. July 11, 2003)); *see also Baker v. Connell*, 488 A.2d 1303, 1309 (Del. 1985) (Superior Court's function as intermediate appellate court is basically the same as the Supreme Court's).

[10] *State v. Cagle*, 332 A.2d 140, 142 (Del. 1974).

[11] *Bennefield v. State*, 2006 WL 258306, at *2 (Del. Super. Ct. Jan. 4, 2006); *Cagle*, 332 A.2d at 142 ("The Superior Court has the duty to review the sufficiency of the evidence and to test the propriety of the findings below. If such findings are sufficiently supported by the record and are the product of an orderly and logical deductive process, the Superior Court must accept them.").

after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[12] The Court considers all probative evidence, whether direct or circumstantial.[13] If the trial court's findings are sufficiently supported by the record, this Court must accept them.[14] It does not "make its own factual conclusions, weigh evidence, or make credibility determinations."[15] Only where the record below indicates the trial court's factual findings are "clearly wrong" may the Court, "in justice," correct them.[16]

But this Court reviews *de novo* the trial court's formulation and application of legal concepts to undisputed facts.[17] And the Court must correct the trial court's errors of law.[18]

---

[12] *State v. Godwin*, 2007 WL 2122142, at *2 (Del. Super. Ct. July 24, 2007) (citing *Downs*, 570 A.2d 1142, 1144 (Del. 1990)); *Brown v. State*, 967 A.2d 1250 (Del. 2009) ("[w]hether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt of all the elements of the crime").

[13] *McKinney v. State*, 2008 WL 282285, at *3 (Del. Super. Ct. Jan. 31, 2008) (citing *Anderson v. State*, 930 A.2d 898, 901 (Del. 2007)).

[14] *Cagle*, 332 A.2d at 142; *Tolson v. Court of Common Pleas*, 2004 WL 2419154, at *2 (Del. Super. Ct. Oct. 13, 2004) ("This Court will not disturb factual findings by the court below if they were derived logically and substantial evidence exists in the record to support such findings.") (citing *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972)).

[15] *Cagle*, 332 A.2d at 142.

[16] *Id.*

[17] *Turner v. State*, 957 A.2d 565, 572 (Del. 2008); *State v. Godwin*, 2007 WL 2122142, at *2 (on appeal, this Court reviews errors of law *de novo*).

[18] *Sutherland v. State*, 2006 WL 1680027, at *2 (Del. Super. Ct. Apr. 28, 2006).

## IV. DISCUSSION

On this appeal, the Court must review *de novo* the questions of law presented—*i.e.*, those of statutory construction and interpretation.[19] So, the Court must first determine whether the Court of Common Pleas committed an error of law when it interpreted Delaware's criminal impersonation statute and formulated the elements that must be proven thereunder. The Court then must determine whether the State's evidence was sufficient to meet the properly constructed elements of our criminal impersonation statute—11 *Del. C.* § 907(1).

### A. THE ELEMENTS OF CRIMINAL IMPERSONATION UNDER 11 *DEL. C.* § 907(1)—THOSE PROVEN, THAT CONTESTED.

Section 907 of Title 11, in the part pertinent here, provides that one "is guilty of criminal impersonation when the person . . . [i]mpersonates another person and does an act in an assumed character intending to obtain a benefit . . . ."[20] So the elements of that offense as charged here are: (1) Evans impersonated another person, in this case, a "Nasir Evans"; (2) Evans did some act in that assumed character; and

---

[19] *State v. Barnes*, 116 A.3d 883, 888 (Del. 2015) ("We review issues of statutory construction *de novo*."); *Wilson v. Sico*, 713 A.2d 923, 924 (Del. 1998) (when a claim on appeal involves a trial court's statutory interpretation, it is reviewed *de novo* to determine if the trial court erred as a matter of law in formulating or applying legal precepts); *State v. Munden*, 891 A.2d 193 (Del. Super. Ct. 2005) (applying *de novo* review to Court of Common Pleas' statutory interpretation).

[20] DEL. CODE ANN. tit. 11, § 907(1) (2016).

(3) Evans did that act intending to obtain some benefit therefrom. Evans conceded at trial and concedes now that the State proved the second and third elements.[21] And for good reason: The evidence of his act—misidentifying himself during a criminal inquiry—and intent when acting—avoiding arrest on outstanding warrants—have long been understood as sufficient.[22] Evans questions just one element essential to his conviction: Whether the State was required as a matter of law and did as a matter of fact prove beyond a reasonable doubt that Evans "impersonate[d]" another "human being who was born and is alive."[23]

### B. UNDER THE PLAIN READING OF 11 *DEL. C.* § 907(1), ONE MUST BE PROVEN TO HAVE IMPERSONATED A REAL, LIVING PERSON TO BE CONVICTED.

Evans argues that the Court of Common Pleas erred in its interpretation of the criminal impersonation statute when it found that the State need not prove that the false name Evans provided belonged to an actual person. This Court applies settled

---

[21] App. to Def's Opening Br. at A22-23; Def's Opening Br., at 13 (arguing only that the State failed to prove Nasir Evans is a "human being who has been born and is alive"); Def's Supp. Ltr. of Jan. 17, 2019 (D.I. 22) (clarifying citations to case law and Evans' focus only the impersonates-another-person element).

[22] *See, e.g., Worley v. State,* 1993 WL 370843 (Del. Aug. 30, 1993) (misidentifying oneself to prevent arrest on outstanding capiases meets act-in-assumed-character and benefit elements); *Harding v. State,* 2000 WL 1587823 (Del. Oct. 18, 2000) (benefit of avoiding arrest for charges being investigated sufficient); *Jackson v. State,* 2004 WL 68803 (Del. Jan. 13, 2004) (misidentifying oneself during a criminal investigation to obtain the benefit of avoiding prosecution under defendant's true identity supports those latter two elements of § 907(1)).

[23] *See* Def's Opening Br., at 4.

-7-

principles of statutory interpretation, giving effect to the plain language of an unambiguous statute, and applying the literal meaning of the statute's words.[24] "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms."[25] A statute is ambiguous only if it is "reasonably susceptible to different interpretations, or if giving a literal interpretation to the words of the statute would lead to an unreasonable or absurd result that could not have been intended by the legislature."[26]

Section 907(1) requires that the State present sufficient evidence to prove beyond a reasonable doubt that one "impersonate[d] another person." True, "the general rule that a penal statute is to be strictly construed does not apply to [Delaware's] Criminal Code."[27] And "the provisions [thereof] must be construed according to the fair import of their terms to promote justice and effect the purposes of the law."[28] But that statutory admonition is not an invitation to abandon the

---

[24] *See Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012) (citing *Dennis v. State,* 41 A.3d 391, 393 (Del. 2012)).

[25] *Friends of H. Fletcher Brown Mansion v. City of Wilmington*, 34 A.3d 1055, 1059 (Del. 2011) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

[26] *See Arnold*, 49 A.3d at 1183 (citing *Dennis,* 41 A.3d at 393).

[27] DEL. CODE. ANN. tit 11, § 203 (2018).

[28] *Id.*

-8-

ordinary rules of statutory construction and interpretation to effect what the State argues would be a more "workable" result[29] or sound public policy.[30]

To discern the meaning of a word in a criminal statute, the Court must first look to the Criminal Code itself. In the Delaware Criminal Code "when the word 'means' is employed in defining a word or term, the definition is limited to the meaning given."[31] And "[w]hen used in th[e] Criminal Code . . . 'Person' *means* a human being who has been born and is alive."[32] Hence, when §907(1) proscribes passing oneself off as "another person," it proscribes only taking on the identity of another real living person.

The Court of Common Pleas judge—first confronted with Evans' textual argument only during oral closings of his misdemeanor bench trial—believed Evans' suggested reading was inconsistent with the purpose of the criminal impersonation statute and "how the statute has been historically applied."[33] Here the

---

[29]    *See* State's Answering Br., at 7-9.

[30]    *State v. Murray*, 158 A.3d 476, 481-82 (Del. Super. Ct. 2017) (citing *Sheehan v. Oblates of St. Francis de Sales,* 15 A.3d 1247, 1259 (Del. 2011)).

[31]    DEL. CODE. ANN. tit 11, § 221(a) (2018). *Compare id.* at § 221(b) (". . . when the word 'includes' is employed in defining a word or term, the definition is not limited to the meaning given, but in appropriate cases the word or term may be defined in any way not inconsistent with the definition given.").

[32]    DEL. CODE. ANN. tit 11, § 222(21) (2016) (emphasis added).

[33]    App. to Def's Opening Br. at A27-28.

-9-

Court must find that the trial court erred when it strayed from the plain text of §§ 907(1) and 222(21).

But the Court recognizes that a reasonable reading of prior Delaware decisions could easily lead one astray and only this closer mapping on appeal dispels the seemingly long-accepted assumption that *any* use of a false name would suffice. Indeed, neither the parties to this appeal nor this Court could identify a prior Delaware decision expressly defining the element "impersonates another person."[34] And the closest that could be found was the resolution of a Fourth Amendment challenge wherein our Supreme Court found a police officer had probable cause to arrest the appellant for criminal impersonation, in part because the officer "had nothing to indicate that the person before him was [fake name given], or that a [fake name given] even existed."[35] This is, of course, far from a definitive answer from the Court on the question of what is necessary to prove the essential element of "impersonat[ing] another person." The Court there observed that its holding only spoke to probable cause to arrest. And that "[p]robable cause does not require proof

---

[34]     *See, e.g.,* n.22, *supra.* (the cases listed never expressly identify whether the names used were those of real or fictitious persons); Def's Opening Br., at 6 ("Whether a defendant must have provided the name of a real person, and not merely that of a fictitious individual, appears to be an issue of first impression in Delaware."); Oral Argument Transcript, Apr. 20, 2018, at 14-15 (D.I. 19) (State concedes this question has never been explicitly answered by a Delaware court).

[35]     *Stafford v. State,* 59 A.3d 1223, 1229 (Del. 2012).

beyond a reasonable doubt, only a reasonable ground for belief of guilt."[36] Yet, the language "or that a [fake name given] even existed" can certainly be viewed as endorsing the notion that the element of criminal impersonation at issue here might be met by giving *any* false name.

But §§ 907(1) and 222 are unambiguous. So their plain language controls[37] and the trial court should have applied the statutory language to the facts of the case before it.[38] If it had, the court would have found the proper construction of the element required the State prove that Evans impersonated a human being who was born and is alive.

## C. THE STATE'S FRUITLESS ATTEMPTS TO SUGGEST AMBIGUITY.

When "a statute is unambiguous, and an application of the literal meaning of its words would not be absurd or unreasonable, there is no legal basis for an interpretation of those words by the court."[39] But even if the Court needed to consult

---

[36] *Id.* at 1230.

[37] *See In re Adoption of Swanson*, 623 A.2d 1095, 1096–97 (Del. 1993) ("If the statute as a whole is unambiguous and there is no reasonable doubt as to the meaning of the words used, the court's role is limited to an application of the literal meaning of those words."); *Hoover v. State*, 958 A.2d 816, 819 (Del. 2008) ("If the language of the statute is unambiguous, the plain meaning of the words controls.") (citing *Ingram v. Thorpe*, 747 A.2d 545, 547 (Del. 2000)).

[38] *Ross v. State*, 990 A.2d 424, 428 (Del. 2010).

[39] *DiStefano v. Watson*, 566 A.2d 1, 4 (Del. 1989).

some other sources it might to discern the meaning of "impersonates another person," the State's postulation would fair no better.

This Court must presume that each word and phrase choice by the legislature when defining elements of a crime is meaningful.[40] And the Court cannot lightly assume that the General Assembly ascribed some broader meaning to a particular elemental phrase—here, "another person"—than the plain statutory text evinces. All the more so when the General Assembly has shown elsewhere in the very same legislative act that it knows how to make such a broader meaning manifest.[41]

As explained before, the criminal impersonation statute at § 907(1) says that one must impersonate "another person." By contrast, the very same subchapter of the Criminal Code defines forgery, in part, as issuing certain writings which purport "to be the act of another person, *whether real or fictitious*."[42] This differing operative language of these two related provisions became Delaware law at precisely the same time via precisely the same act of the General Assembly.[43] This is strong

---

[40] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 344 (Del. 2012)("We affirm the canon of statutory construction that every word chosen by the legislature . . . must have meaning.").

[41] *See JAMA v. Immigration and Customs Enf't*, 543 U.S. 335, 341 (2005).

[42] DEL. CODE. ANN. tit 11, § 861(a)(2) (2018) (emphasis added).

[43] 58 DEL. LAWS ch. 497, § 1 (1972) (first and simultaneous enactment of both the language "impersonates another person" found in Delaware's criminal impersonation statute at 11 *Del. C.* § 907(1) and the language "the act of another person, whether real or fictitious" found in Delaware's forgery statute at 11 *Del. C.* § 861(a)(2)).

textual evidence that the General Assembly purposely intended to narrow the other persons whom one might criminally impersonate under § 907(1) to "human beings who ha[ve] been born and [are] alive."[44] If the legislature intended to include taking on a wholly fictitious persona as an act prohibited by the impersonation statute, no doubt it knew exactly how to do so. It did not. And, this Court cannot do so in its stead.[45]

Undeterred, the State goes on to assert that "[l]iteral application of the term 'person' as defined in 11 *Del. C.* § 222(21) in this context would lead to 'unreasonable, absurd,' and 'unworkable results.'"[46] Not so. Far from being an

[44]     *See Schueler v. Martin*, 674 A.2d 882, 888 (Del. Super. Ct. 1996) (citing *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982)) ("In interpreting a statute, this Court will assume that, where a provision is found in part of a statute but is omitted from another, the legislature was aware of the omission and intended it."); *C & T Associates v. Government of New Castle*, 408 A.2d 27, 29 (Del. Ch. 1979) ("The legislative body is presumed to have inserted every provision for some useful purpose and construction, and when different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended.").

[45]     *See Seth v. State*, 592 A.2d 436, 440 (Del. 1991) ("[W]hen statutory language is both clear and consistent with other provisions of the same legislation and with legislative purpose and intent, a court must give effect to that intent because it is for the legislature, and not the courts, to declare the public policy of the State."). *See also State v. Cephas*, 637 A.2d 20, 28 (Del. 1994) ("It is the General Assembly and not this Court which has the prerogative to legislate. This Court's role is to construe existing legislation."); *Freeman v. X-Ray Associates, P.A.*, 3 A.3d 224, 227 (Del. 2010) ("We must give effect to the legislature's intent by ascertaining the plain meaning of the language used."); *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 542 (Del. 2011) ("[T]his Court's role is to interpret the statutory language that the General Assembly actually adopts, even if unclear and explain what we ascertain to be the legislative intent without rewriting the statute to fit a particular policy position.").

[46]     State's Answering Br., at 7-8 (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985) ("Ambiguity may also arise from the fact that giving a literal interpretation to words of the statute would lead to such unreasonable or absurd consequences as to compel a conviction that they could not have been intended by the legislature.") and *Wyant v.*

-13-

interpretation inviting unreasonable or absurd results, it is one supported by treatises[47] and shared by many sister states.

New York's criminal impersonation statute, for example, closely mirrors Delaware's.[48] The only difference between New York's statute and this State's is that under New York's law criminal impersonation occurs when the defendant "impersonates *another*," whereas, Delaware's law states that she "impersonates

---

*State,* 519 A.2d 649, 658 (Del. 1986) ("The Legislature must be presumed not to intend unreasonable, absurd, or unworkable results.")).

[47]     *See* 32 Am. Jur. 2d *False Personation* § 1 (2019) ("False personation is the crime of pretending to be another person under proscribed circumstances. The person must be a real person."); 25 C.J.S. *False Personation* §1 (2019) ("Giving a false name is not impersonation unless the name given is that of a real person . . . ); *see also* George L. Blum, *Criminal Liability for False Personation During Stop for Traffic Infraction,* 26 A.L.R.5th 378 (2011).

[48]     *Compare* N.Y. Penal Law § 190.25 (McKinney 2018) ("A person is guilty of criminal impersonation in the second degree when he . . . [i]mpersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another."), *with* DEL. CODE ANN. tit. 11, § 907(1) (2018) ("[A] person is guilty of criminal impersonation when the person . . . [i]mpersonates another person and does an act in an assumed character intending to obtain a benefit or to injure or defraud another person.").

*another person*."[49]  New York courts have more than once addressed whether "another" means a real, identifiable person, and have consistently held it does.[50]

Connecticut's criminal impersonation statute is almost identical to New York's statute,[51] and like New York, Connecticut courts have interpreted "another" to mean a real or actual person based on the plain language of the statute. The Connecticut Supreme Court held:

> The statute as written does not prohibit giving a false name; it prohibits impersonating another. . . If the legislature wishes to forbid the fraudulent use of false names generally, it is free to do so. Unless and until it does so, this Court should not act in its place.[52]

---

[49]    *Id.* (emphasis added).

[50]    *See People v. Sadiq*, 654 N.Y.S.2d 35, 36 (N.Y. App. Div. 1997) (reversing conviction for criminal impersonation for insufficient evidence where the State did not present evidence at trial that the appellant "assumed identity of a real person"); *People v. Powell*, 399 N.Y.S.2d 477 (N.Y. App. Div. 1977) (same); *People v. Jones*, 376 N.Y.S.2d 885 (N.Y. Sup. Ct. 1975) (in criminal impersonation prosecution: "The People will be required to demonstrate, in addition, that 'the name given is that of a real person'"); *People v. Sherman*, 455 N.Y.S.2d 528, 530 (Rochester City Ct. 1982) (in New York's criminal impersonation statute: "The word 'another' means a real person and not just a fictitious or assumed name."); *see also*, *People v. Gaissert*, 348 N.Y.S.2d 82, 84 (Nassau County Ct. 1973) ("Rightly or wrongly, falsely identifying oneself to a police officer is not, in and of itself, a violation of an existing statute. It does not amount to Criminal Impersonation unless the name given is that of a real person."); *People v. Debranche*, 954 N.Y.S.2d 862, 864 (N.Y. Crim. Ct. 2012) (noting in an identity theft case that under New York law "criminal impersonation requires that a 'real person' ha[d] been impersonated").

[51]    Conn. Gen. Stat. Ann. § 53a-130 (West 2018) (emphasis added) ("A person is guilty of criminal impersonation when such person (1) *impersonates another* and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another.").

[52]    *State v. Smith*, 479 A.2d 814, 819 (Conn. 1984); *State v. Jackson*, 630 A.2d 164, 166 (Conn. App. Ct. 1993) ("[G]iving a false name is not impersonation unless the name given is that of a real person. . . . For this reason, the state must adduce evidence at trial that the name a defendant gives belongs to a real person.").

-15-

Likewise, Kansas has a false impersonation statute that reads: "[a]ggravated false impersonation is falsely representing or *impersonating another* and in such falsely assumed character . . ."[53] Kansas courts have repeatedly held that under the plain language of the statute, "[f]ailure to prove that the defendant impersonated an actual person is fatal and requires reversal."[54]

In short, as the Nebraska Supreme Court recently observed:

> State courts . . . conclude in the context of various impersonation statutes that the "person" impersonated must be a real person. Several state courts have accordingly held that giving a police officer the wrong name, without proof the name corresponded to a real individual, is insufficient to support a charge of impersonation.

> Many state impersonation statutes are worded in terms of impersonating "another," which is understood as "another person," similar to the federal statutes. "Another" in this context has been held to mean holding oneself out as a specific, actual individual who is someone other than oneself.[55]

To be true to the current specific language of Delaware's criminal impersonation statute, this Court must count itself among those many other states'

---

[53] Kan. Stat. Ann. § 21-5917 (West 2018) (emphasis added).

[54] *State v. Banks*, 790 P.2d 962, 962 (Kan. Ct. App. 1990); *State v. Diaz*, 308 P.3d 17, 20 (Kan. Ct. App. 2013) (noting that "an essential element of the crime of aggravated false impersonation requires proof that the defendant falsely impersonated an *actual* person" and holding that may be proven by circumstantial evidence).

[55] *State v. Covey*, 859 N.W.2d 558, 564 (Neb. 2015) (collecting cases).

courts.[56] To convict one under 11 *Del. C.* § 907(1), the State must prove by direct or circumstantial evidence that the charged did in fact assume the name of a real person; if it cannot do that then the State fails to meet its burden.

### D. EVANS' CRIMINAL IMPERSONATION CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND MUST BE VACATED.

As noted before, the trial evidence on the impersonation element consisted solely of Officer Nikituk's testimony about his attempt to identify Evans with the two false names provided: "With both of those names specifically I don't know if the name actually populated or not. I know the pictures didn't match. Either the name didn't populate or the pictures did not match. It was one or the other."[57] Exhibiting the expected considerable candor of a Deputy Attorney General at oral argument, the State conceded that evidence was insufficient under the Court's

---

[56] The Court here offers its observation on the State's contention that this interpretation will be "unworkable" and "reward[s] individuals fortunate enough to provide police with a name not found" by the police during their onsite encounters. *See* State's Answering Br., at 9.

This decision is not meant to and does not, in any way, abrogate our Supreme Court's decision in *Stafford v. State*: in such circumstances a roadside investigator has "sufficiently trustworthy information for a reasonable officer to believe[—*i.e.*, probable cause—]that [the defendant] ha[s] committed criminal impersonation." 59 A.3d 1223, 1230 (Del. 2012). And other Delaware criminal statutes are of aid in dealing with these situations. *See, e.g.,* DEL. CODE ANN. tit. 11, § 1902(b) (2018) (providing that any person who is properly detained and questioned "who fails to give identification . . . to the satisfaction of the officer may be detained and further questioned and investigated."); *see also Jackson,* 2004 WL 68803 (providing examples of other charges, in addition to criminal impersonation, that may arise when one continues to misidentify himself during a police inquiry and processing).

[57] App. to Def's Opening Br. at A17 (Trial Transcript, June 26, 2017).

construction of the impersonation element clarified above.[58] But the Court still must make an independent determination that a reversible error was committed.[59] And here the Court must conclude that even viewing it in the light most favorable to the State, no rational fact finder could find this scant evidence sufficient to find beyond a reasonable doubt that the name "Nasir Evans" belonged to a real person "who has been born and is alive."[60]

## V. CONCLUSION

The Court of Common Pleas erred as a matter of law when it interpreted Delaware's criminal impersonation statute and formulated the essential impersonation element thereof. The State must prove by direct or circumstantial evidence that a charged defendant did in fact assume the name of a real person; if it cannot then the State fails to meet its burden. The State, with admirable candor,

---

[58] Oral Argument Transcript, Apr. 20, 2018, at 16-19. The Court recognizes the State's concession here "is in accordance with the highest traditions of the Delaware Bar and the prosecutor's unique role and duty to seek justice within an adversary system." *Weddington v. State*, 545 A.2d 607, 616 (Del. 1988). *See also* American Bar Association, *Standards for Criminal Justice: Prosecution Function and Defense Function*, Standard for Prosecution Function 3-1.2(c)(1993) ("The duty of the prosecutor is to seek justice, not merely to convict."); National District Attorneys Association, *National Prosecution Standards*, § 1.1 (2d ed. 1991) ("The primary responsibility of prosecution is to see that justice is accomplished.").

[59] *Weddington*, 545 A.2d at 612 ("A confession of error does not *require* the reversal of the judgment of conviction in the trial court.").

[60] *See Williams v. State*, 884 A.2d 512 (Del. 2005) ("In reviewing a claim of insufficiency of the evidence, this Court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

admits that in Evans' trial it did not adduce sufficient evidence under this construct of the essential impersonation element. For these reasons, the judgment of the Court of Common Pleas is **REVERSED.** This case is remanded to that Court for a judgment of acquittal to be entered and for any further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
**Paul R. Wallace, Judge**