# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SAMUEL L. GUY, City Council Member at Large of the City of Wilmington, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | C.A. No.: N19C-11-064 AML |
| CITY OF WILMINGTON, a municipal corporation, | ) ) ) | |
| Respondent. | ) ) | |

Submitted: February 13, 2020
Decided: May 15, 2020

**Upon Respondent's Motion to Dismiss: GRANTED**
**Upon Petitioner's Motion for Partial Summary Judgment: MOOT**

## <u>MEMORANDUM OPINION</u>

Samuel L. Guy, Esquire, of The Law Office of Samuel L. Guy, Wilmington, Delaware, *Petitioner*.

Daniel A. Griffith, Esquire, and Kaan Ekiner, Esquire, of WHITEFORD TAYLOR PRESTON LLC, Wilmington, Delaware, *Attorneys for Respondent*.

**LeGROW, J.**

This dispute arises from contested votes on three resolutions that were considered during a November 2019 Wilmington City Council meeting. Petitioner is an elected member-at-large of the Wilmington City Council. A simple majority of the City Council approved the resolutions, but the Council president declared the resolutions defeated because they did not receive supermajority approval, which the City Council president concluded was needed under the Council's rules. The parties disagree as to whether the relevant resolutions required (i) a simple majority vote of all City Council members, or (ii) a two-thirds supermajority vote because the resolutions were in derogation of a City Council member's existing rights or privileges.

The respondent's motion to dismiss requires this Court to resolve three issues. First, does the case present a justiciable controversy? Second, if justiciable, does the rule requiring a supermajority vote contradict the city charter? Finally, if the supermajority rule is valid, did it apply to the resolutions at issue? For the reasons that follow, I conclude respondent's motion to dismiss should be granted because, although the case presents a justiciable controversy, the rule requiring a supermajority vote to amend certain rules does not violate the city charter, and the defeated resolutions fell within the rule requiring a supermajority vote.

**FACTUAL AND PROCEDURAL BACKGROUND**

Respondent, the City of Wilmington (the "City"), is a Delaware municipality organized under the Wilmington City Charter (the "Charter").[1]  The City's legislative functions are invested in the City Council (the "Council"), which consists of 13 members: the Council President (the "President"), eight members elected from separate geographical districts, and four members elected from the City at large.

Section 2-104 of the Charter empowers the Council to "determine its own rules and order of business, provide for such committees as it deems necessary[,]" and "employ and fix the salaries of such persons as may be necessary for a proper discharge of its business."  On January 3, 2017, the Council adopted The Council of the City of Wilmington Rules (the "Rules"),[2] which govern the Council's actions while conducting business, including meeting procedures and voting processes. Rule 8, which governs resolutions, provides that the "vote of a majority of the members in attendance and voting shall prevail unless otherwise provided by these rules or the provisions of the City Charter."  Rule 23 additionally provides that "[n]o rule may be suspended or amended in derogation of an existing right or privilege of any member, except by a two-thirds vote of all the members of Council."

---

[1] Wilmington City Charter (hereinafter "Charter"), https://library.municode.com/de/wilmington/ codes/code_of_ordinances?nodeId=ORCHBOWI.

[2] Stipulated Facts, Ex. 9 Rules of Wilmington City Council (hereinafter "Rule").  This exhibit reflects the most recent revised version dated Nov. 1, 2019.

The Council holds bi-monthly meetings. During the November 1, 2019 Council meeting, four resolutions were presented for the Council's consideration. Resolution 4727, which expanded the public comment period during Council meetings, was voted on and adopted.[3] The other three resolutions, however, were voted upon but deemed defeated because they did not receive a supermajority of votes (collectively, the "Defeated Resolutions"): (i) Resolution 4728, which would allow the public to address the Council on any topic, not just those on the agenda, during Committee of the Whole meetings; (ii) Resolution 4729, which would establish a Personnel Committee to oversee personnel-related matters with the Council and throughout the City at large; and (iii) Resolution 4730, which clarified that the hiring, firing, change of pay rate, or discipline of a Council staff member required Council approval.

The Defeated Resolutions each received seven "yea" votes.[4] Petitioner, Council Member-At-Large Samuel L. Guy, contends the Defeated Resolutions received a sufficient majority of votes, seven Council members, to render the Defeated Resolutions adopted, and that a two-thirds supermajority was not required.

---

[3] Stipulated Facts, Ex. 3 Recorded Roll Call Votes of the Special City Council Meeting (Nov. 1, 2019). Resolution 4727 received seven "yea" votes and four "nay" votes with one abstention and one "present."

[4] *Id*. Resolutions 4728 and 4730 received five "nay" votes with one abstention. Resolution 4729 received four "nay" votes with one abstention and one "present."

3

The City contends Rule 23 applies to the Defeated Resolutions and therefore they only could be adopted with a supermajority vote.

On November 7, 2019, Petitioner filed this action seeking a declaratory judgment that Council members are authorized to amend the Rules through their rights under the Charter, and that seven Council members constitute a sufficient number of votes to adopt the Defeated Resolutions. Petitioner simultaneously filed a motion for partial summary judgment reiterating the relief sought in the complaint. The City then filed a motion to dismiss the complaint for non-justiciability and failure to state a claim. The parties simultaneously briefed and argued those motions.

The City contends Petitioner's claims are non-justiciable because the complaint raises a political question and "seeks to entangle the judiciary in a purely intra-legislative dispute."[5] The City also argues that, even if the claims are justiciable, the complaint must be dismissed as a matter of law because the plain language of the Rules and Charter show that the resolutions properly were defeated. Petitioner, on the other hand, argues the claims are justiciable because the complaint does not raise a political question, but simply asks the Court to determine the applicable voting standard for Council resolutions. Petitioner contends he is entitled to summary judgment on the merits of his claims because Rule 23 is in derogation

---

[5] Def. City of Wilmington's Opening Br. in Supp. of its Mot. to Dismiss Pl.'s Compl. (hereinafter "Def.'s Mot.") 3.

4

of Section 2-201 of the Charter and, under Section 2-201, the Defeated Resolutions received a majority vote and therefore were approved.

Petitioner's motion for summary judgment raises the same issues as the motion to dismiss. For the reasons that follow, the City's motion to dismiss is granted because the complaint fails to state a claim. The Petitioner's motion for summary judgment therefore is moot.

## ANALYSIS

The Court first must determine whether Petitioner's complaint presents a justiciable controversy because the Court's jurisdiction is a threshold inquiry.[6] If the case is justiciable, the Court then may consider the merits of Petitioner's claims.

## I. The case presents a justiciable controversy.

Petitioner seeks a declaratory judgment that the Defeated Resolutions validly were adopted because (1) the supermajority voting rule in Rule 23 contravenes the Charter when applied to votes on Council resolutions, or (2) if Rule 23 applies to resolutions, the Defeated Resolutions do not derogate a Council member's existing rights or privileges and therefore do not require a supermajority vote.

---

[6] *See Crescent/Mach I Partners L.P. v. Dr Pepper Bottling Co. of Texas*, 962 A.2d 205, 208 (Del. 2008); *see also Baier v. Upper New York Inv. Co. LLC*, 2018 WL 1791996, at *5 (Del. Ch. Apr. 16, 2018); *K&K Screw Prods., L.L.C. v. Emerick Capital Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011).

In Delaware, a justiciable controversy must exist before a court can address a pending dispute.[7] In recognition of the separation of powers between the three branches of government and the need for each branch to operate independently within their constitutionally conferred field of activity, courts generally consider "political questions" to be non-justiciable. Cases that present "political questions" bear at least one of the following attributes: (1) "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it;" (2) "the impossibility of deciding [the issue] without an initial policy determination of a kind clearly for nonjudicial discretion;" (3) "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;" or (4) "an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."[8]

The City contends the claims are non-justiciable because the complaint raises a political question.[9] The City argues the complaint does not "invoke any constitutional protections or rights that have purportedly been violated" that would

---

[7] *Crescent*, 962 A.2d at 208.
[8] *State, ex rel. Oberly v. Troise*, 526 A.2d 898, 904 (Del. 1987); *see Baker v. Carr*, 369 U.S. 186, 217 (1962).
[9] Def.'s Mot. 4.

6

"justify judicial involvement[,]" there is a "textually demonstrable commitment as to the Council's plenary authority not only to legislate, but also to determine its rules and enforcement mechanisms[,]" and judicial intervention would have a "slippery slope" effect due to the "lack of limitations for inclusion or exclusion for the remedy sought" by Petitioner.[10]

In its argument, the City relies upon *State, ex rel. Oberly v. Troise*[11] and *Pellegrino v. O'Neill*.[12] In *Troise*, the State Attorney General sought to test the validity of the Governor's full-term commissions issued without the consent of the Senate after the Senate failed to act on the Governor's nominations for a prolonged period of time.[13] The issue required the Court to interpret Article III, Section 9 of the Delaware Constitution, which allows the Governor to appoint certain public officials based on the majority consent of the Senate.[14] The Delaware Supreme Court ultimately opined the issue was justiciable because it turned on the meaning of a constitutional provision.[15] The Court ruled the commissions invalid because Article III, Section 9's plain language "clearly assign[ed] the confirmation power to the Senate[.]"[16]

---

[10] *Id*. at 6-9.
[11] 526 A.2d 898.
[12] 480 A.2d 476 (Conn. 1984).
[13] 526 A.2d at 899.
[14] *Id*. (citing Del. Const. art. III, § 9).
[15] *Id*. at 905.
[16] *Id*.

In reaching its decision on justiciability, the *Troise* Court considered the Connecticut Supreme Court's decision in *Pellegrino*, a declaratory judgment action that sought appointment of more civil trial judges "in order to implement the constitutional right to justice without delay[.]"[17] The relief sought would have required the judiciary to compel the legislature to create additional judgeships. The Connecticut Supreme Court held the issue non-justiciable because of a textually demonstrable commitment to the legislature in determining the number of and appointment of judges. The Connecticut court concluded judicial involvement would encroach upon the province of the legislature.[18]

*Troise* and *Pellegrino* generally stand for the proposition that when the question at issue requires the Court to interpret a statute or rule, that question is not a political question because the judicial branch's function is to interpret the law.[19] For example, in *Smith v. Sussex County Council*, the petitioner sought a judicial determination that a challenged ordinance validly was adopted, and the Court considered the issue because it required judicial interpretation of a statute.[20] Additionally, in *duPont v. Director of Div. of Revenue of Dept. of Finance*, the Court

---

[17] *Pellegrino*, 480 A.2d at 477.

[18] *Id.* at 484 ("We have declared ourselves unable to respond to its demand in the present context without exceeding our own constitutional authority. The answer must lie in the hearts and minds of the legislators, who are sworn to support the state as well as the federal constitution and to discharge their duties to the best of their abilities. More fundamentally, it must rest with the people who elect them.") (internal citations omitted).

[19] *Marbury v. Madison*, 5 U.S. 137 (1803).

[20] 632 A.2d 1387 (Del. Ch. July 13, 1993).

stated "the power of the [legislature] . . . is subject to constitutional restrictions, whether express or necessarily implied . . . , and, in an appropriate case, it is the duty of the Court to define such restrictions."[21]

The question of whether Rule 23's supermajority vote requirement contravenes the Charter is justiciable because it requires the Court to interpret the Charter. This interpretation does not impermissibly intertwine the judiciary with the legislative branch's power. There is no textually demonstrable constitutional commitment of this issue to another branch, and, unlike the questions before the courts in *Troise* and *Pellegrino*, there are well-defined judicial standards by which courts routinely interpret statutes and rules.

Petitioner's second question presents a closer issue as to justiciability. The Charter imbues the Council with the authority to adopt and enforce its own rules,[22] and in order to enforce the Rules, the Council necessarily must interpret them. Although Petitioner complains that without court intervention the President will have unfettered authority to defeat any resolution under the guise of requiring a supermajority vote, that argument ignores the separation of powers and the principles of an electoral system of government. As the *Troise* Court cautioned, courts must be careful not to insert themselves in resolving a political question that

---

[21] 347 A.2d 653, 657 (Del. 1975).
[22] Charter § 2-104.

would "entangle the judiciary in a political thicket, and might ultimately indicate a 'lack of the respect due coordinate branches of government.'"[23]  In the present case, the mechanism for controlling the President ultimately lies with the electorate through the democratic process.  But, determining whether Rule 23 applies to the Defeated Resolutions does not require the Court to resolve the dispute based on standards that are not judicially manageable, nor does it require the Court to make policy decisions, which necessarily are reserved for the other branches.

The Court need not, however, conclusively determine whether the second question is justiciable because, even if it is justiciable, it is clear that the case should be dismissed under Superior Court Rule 12(b)(6).

## II.     The complaint fails to state a claim for declaratory relief.

On a motion to dismiss, the Court must determine whether the plaintiff "may recover under any reasonably conceivable set of circumstances susceptible of proof[.]"[24]  A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would [the] plaintiff be entitled to relief."[25]  When applying this standard, the Court will

---

[23] 526 A.2d at 905 (citing *Baker*, 369 U.S. at 217).

[24] *Holmes v. D'Elia*, 2015 WL 8480150, at *2 (Del. Dec. 8, 2015) (quoting *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

[25] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960).

accept as true all non-conclusory, well-pleaded allegations[26] and must draw all reasonable factual inferences in favor of the non-moving party.[27]

### A. The supermajority vote required to amend certain rules does not violate the Charter.

The interplay between Rule 23 and Section 2-201 of the Charter requires the Court to construe both provisions. Delaware courts follow settled principles of statutory interpretation, which require giving effect to the plain language of an unambiguous rule or statute.[28] When a statute is clear and unambiguous, statutory interpretation is not needed as courts "have no authority to vary the terms . . . or ignore mandatory provisions."[29] A statute only is ambiguous if "it is reasonably susceptible to different interpretations, or if giving a literal interpretation to the words of the statute would lead to an unreasonable or absurd result that could not have been intended by the legislature."[30]

Rule 23 states that "[n]o rule may be suspended or amended in derogation of an existing right or privilege of any member, except by a two-thirds vote of all the members of Council." Petitioner argues that Rule 23 contradicts Section 2-201,

---

[26] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).

[27] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley,* 705 A.2d 1029, 1034 (Del. 1998)).

[28] *Ovens v. Danberg*, 149 A.3d 1021, 1024 (Del. 2016).

[29] *Board of Adjustment of Sussex Cty. v. Verleysen*, 36 A.3d 326, 331 (Del. 2012) (quotations and citations omitted).

[30] *Evans v. State*, 212 A.3d 308, 314 (Del. Super. 2019) (quoting *Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012)) (internal quotations omitted).

11

which only requires a simple majority vote of Council members. Section 2-201 of the Charter, however, applies to the "consideration and passage of *ordinances*." The Charter expressly distinguishes between resolutions and ordinances.[31] Although Petitioner argues Section 2-201 applies to all Council votes, he offers no textual support for that position, and there is no ambiguity in Section 2-201's scope. The Defeated Resolutions are not ordinances, and Rule 23's requirement for a supermajority vote for certain resolutions therefore does not conflict with Section 2-201. By requiring a majority vote of all the members of the Council, including the President, in order to adopt an ordinance, the Charter does not restrict the Council's ability to adopt rules requiring some greater or lesser vote in order for the Council to act by resolution.

## B. On their face, the Defeated Resolutions are in derogation of an existing right or privilege of a Council member.

Finally, Petitioner argues that Rule 23's supermajority provision did not apply to the Defeated Resolutions. Petitioner's argument, however, is unpersuasive. Resolutions 4728, 4729, and 4730 each would restrict or alter an existing right or privilege of a Council member. Resolution 4728 would have expanded the permissible scope of public comment during Council meetings, allowing the public

---

[31] *Compare* Charter § 2-304 (titled "Authentication, recording, codification and printing of *ordinances*"), *with id*. § 2-403 ("the council by *resolution* may employ, or authorize the employment by its committees").

to comment on any topic without limitation. This resolution is contrary to the President's existing power under Rule 3[32] to establish and enforce rules for speakers to ensure proper decorum. Robert's Rules of Order, adopted in Rule 25,[33] define decorum as confining remarks to the issues at hand.[34]

Resolution 4729 sought to add a personnel committee to the standing committee, name the Chair of the newly formed committee, and give the President Pro Tem the authority to name members to that committee. Rule 12, however, establishes that the President has the power to appoint special committees, and Rules 10 and 11 state the President has the authority to appoint committee chairs and vice chairs and to oversee all committees. Resolution 4729's adoption would change the President's existing rights and obligations, as it would require the President to preside over an additional committee and remove the President's right to name the committee's chair and the committee's other members.

Finally, Resolution 4730, if adopted, would have established that the Council can hire, fire, and change the pay rate for staff. That new resolution would contravene Resolution 17-002,[35] which establishes that the President has the sole

---

[32] Rule 3 ("The President shall establish and enforce rules for speakers to ensure proper decorum is maintained including, but not limited to, enforcing the three-minute time-limit for each speaker and/or prohibiting the use of obscene or profane language.").

[33] Rule 25 ("All questions of parliamentary procedure not provided for in these rules shall be decided in accordance with the latest edition of Robert's Rules of Order.").

[34] Stipulated Facts, Ex. 11 Robert's Rules of Order (11th ed.).

[35] Stipulated Facts, Ex. 8 Resolution 17-002 (Jan. 3, 2017).

authority to fire staff.  Accordingly, all three resolutions would have abridged the President's existing rights and therefore fell within Rule 23's supermajority voting requirement.

**III.    Petitioner's partial motion for summary judgment is denied as moot.**

Petitioner's motion for partial summary judgment seeks judgment as a matter of law that Rule 23's supermajority voting requirement is invalid in light of Section 2-201 of the Charter, or that the Defeated Resolutions did not require a supermajority vote.  This Court's decision granting the City's motion to dismiss resolves both issues in the City's favor and therefore renders Petitioner's partial motion for summary judgment moot.

**<u>CONCLUSION</u>**

For the foregoing reasons, the City of Wilmington's Motion to Dismiss is **GRANTED**, and Samuel L. Guy's Motion for Partial Summary Judgment is **DENIED AS MOOT**.  **IT IS SO ORDERED**.